## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* TOMLIN, administratrix.

1. The case comes to this court on writ of certiorari to the Court of Appeals. The defendant in certiorari made a motion in this court to dismiss the case, on the ground that the petition for certiorari failed to comply with rule 2 with regard to the grant of writs of certiorari by this court. On examination of the assignments of error contained in the petition, after the grant of the · writ and after argument in this court, it appears that the petition was improvidently granted.

(*a*) The petition offends rule 2, which provides: *Argument and brief of authorities must not be included in the petition, but must be submitted separately.*

(*b*) In other portions of the petition the assignments of error are based upon the contention that the evidence did not authorize specified instructions to the jury. These do not assign error on any questions of law of gravity and importance.

(*c*) Whether or not the evidence supports the verdict in this case does not present a question of gravity and general importance.

2. There being no valid assignments of error of gravity and general importance, some of them failing to comply with rule 2, regulating the grant of writs of certiorari by this court, the writ of certiorari must be dismissed.

3. A judgment dismissing the writ of certiorari was heretofore rendered; whereupon the losing party filed a motion for rehearing, which was granted. On the second consideration of the case the judgment heretofore rendered is adhered to, but the headnotes and opinion have been rewritten in the light of the aforesaid proceedings and the filing of additional briefs.

No. 4872. FEBRUARY 11, 1926. ADHERED TO ON REHEARING, FEBRUARY 26, 1926.

Certiorari; from Court of Appeals. 33 *Ga. App.* 585.

Louisville & Nashville Railroad Company and other railroad companies operating under an agreement for terminal and yard

---

Certiorari 11 C. J. p. 132, n. 49 New; p. 149, n. 12; p. 183, n. 51; p. 184, n. 56; p. 192, n. 32.

purposes, known as "Atlanta Joint Terminals," filed a petition for certiorari, alleging error in the decision of the Court of Appeals in a case brought by Mrs. Katie Mae Tomlin, administratrix of W. C. Tomlin, deceased. The suit was brought by Mrs. Tomlin in behalf of herself and two minor children against the Atlanta Joint Terminals, to recover damages for the negligent homicide of her deceased husband. The suit was based upon the Federal employer's liability act, and the jury returned a verdict for the plaintiff. Upon the overruling of a motion for new trial the defendants excepted. The Court of Appeals affirmed that judgment; whereupon the defendants filed this petition for certiorari. Omitting the more elaborate statement of the case as made in the petition, the following is the case made in this court upon which the certiorari was granted:

"Petitioners assign error upon the ruling and decision of the Court of Appeals in said case, affirming the judgment of the lower court, and for more specific and distinct assignments of error petitioners allege: First: Petitioners assign error upon the decision of the Court of Appeals of the State of Georgia, as set forth in the opinion of said Court in paragraph one thereof, as follows: '1. When considered in the light of the facts of the case and the entire charge of the court, none of the excerpts from the charge as complained of show reversible error.' Petitioners aver that the said decision is erroneous, for that said case is one in which a verdict could have been rendered for the defendants upon the facts; that a verdict, according to defendants' contentions, was demanded upon the ground of the assumption of risk; that a verdict for the amount of the contribution to the beneficiaries during the years which each would have been entitled to such benefit, and not beyond, might have been rendered; that a verdict greatly reduced by contributory negligence of the decedent might have been rendered, there being evidence of gross contributory negligence in the aspect of the case most favorable to plaintiff. In view of such evidence it could not be determined what elements went to make up the verdict, the same being for a gross sum. From this portion of the opinion, it is apparent that the Court of Appeals does not hold that the portions of the charge complained of did not constitute error, but only holds that when considered in the light of the facts and

the entire charge of the court, none of the excerpts complained of show reversible error. It is respectfully urged that reversible error was committed by the trial court in its charge, and that this error was never corrected in the only manner provided, according to the decisions of the Supreme Court of the State of Georgia. 7. The seventh ground of the amended motion for new trial complains of the charge of the court upon the measure of damages under the employers' liability act of Congress, as follows: 'Then, when you finally determine, gentlemen, the total sum that would represent the losses of Mrs. Tomlin and her two children, you would have to reduce that to its present cash value. And in the matter of ascertaining that, gentlemen, you would find first how much they would have lost annually, what would be their annual loss. And in determining this, gentlemen, you would take into consideration the fact that old age as it comes on would have reduced Mr. Tomlin's capacity to labor and earn money; and take into consideration the uncertainty of business, the difficulty of obtaining and keeping employment, and the fact that a person rarely if ever labors every day of his life, and make due allowance for all such considerations. Then you would determine whether, if there was a reduction of his earning capacity, there would be a reduced amount to go to these beneficiaries; and in this way ascertain what you think would represent their annual loss. Then, by multiplying the annual loss by the number of years that you think they would have lived—that is, the joint lives of Mr. and Mrs. Tomlin, and the lives of the two children until they were twenty-one years old,—you would get the total amount of the loss. You would ascertain these amounts to the wife and two children separately, make the calculation separately, because Mrs. Tomlin's expectancy, and her husband's expectancy, may be greater than the period of minority of the children; so when you get the annual loss of each one, you would add those sums together, and that would give you the total annual losses. Then by multiplying the total annual loss by the number of years of the expectancy involved, you would get the gross sum or total sum to be allowed. As I said, gentlemen, when you finally ascertain this sum, it becomes your duty to reduce it to its present cash value, which would be a less sum, and this can be done by any correct method of calculation satisfactory to yourselves.'

"In giving this instruction the court committed a clear error of most hurtful character, since the jury was instructed to arrive at the gross amount of damages to which the respective beneficiaries would be entitled, by combining the annual losses of the beneficiaries, and by multiplying the combined annual losses by the combined expectancies of the beneficiaries. The language containing this error is found in that portion of the instructions hereinbefore quoted, as follows: 'Then, by multiplying the annual loss by the number of years that you think they would have lived, that is, the joint lives of Mr. and Mrs. Tomlin, and the lives of the two children until they were twenty-one years old, you would get the total amount of the loss. You would ascertain these amounts to the wife and two children separately, make the calculation separately; because Mrs. Tomlin's expectancy, and her husband's expectancy, may be greater than the period of the minority of the children. So when you get the annual loss of each one, you would add these sums together, and that would give you the total annual losses. Then by multiplying the total annual loss by the number of years of the expectancy involved, you would get the gross sum or total sum to be allowed.' This extract from the charge cannot be read without revealing the glaring error which it embodies. It was properly made the basis of ground for new trial, and it is respectfully submitted that such error as is contained in this instruction could not be cured unless the same was specifically and unqualifiedly withdrawn by the court from the jury's consideration; and there is no pretense that this was done. It was not corrected by any other portion of the charge. It could only be corrected by pointing out to the jury the fact that it was error and withdrawing it from their consideration. The Court of Appeals has,' therefore, disregarded the decision of the Supreme Court of Georgia, which set out the only proper method of correcting an erroneous charge, in the following cases, to wit: *Savannah Railway Co.* v. *Hatcher,* 118 *Ga.* 273, in which Mr. Justice Lamar, citing with approval *Americus Railroad Co.* v. *Luckie,* 87 *Ga.* 6, and *Macon Railway Co.* v. *Moore,* 99 *Ga.* 229, and after holding that the charge given was confusing, then uses the following language: 'But the defendant in error insists that this error was cured in subsequent portions of the charge. The attention of the jury was not spe-

cially called to the fact that it was intended to correct what had been previously said. The jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, without being instructed so to do by the judge. As to how such error could be cured, see *Americus Railway Co.* v. *Luckie,* supra.' The language of *Americus Railroad Company* v. *Luckie,* referred to by Mr. Justice Lamar, is as follows: 'Upon the trial of a suit against a railroad company for personal injuries to the plaintiff, it was error to charge as follows: 'If, by the exercise of ordinary care and diligence, the plaintiff could have avoided the consequences to herself of the defendant's negligence, she cannot recover; but if both parties were at fault, and the alleged injury was the result of the fault of both, then, notwithstanding the plaintiff's negligence, she would be entitled to recover, but the amount of the recovery would be abated in proportion to the amount of the default on her part.' The error consisted in stating in immediate connection with each other, and without proper explanation, two distinct rules of law, and thus qualifying the former by the latter, which is not the purpose of the statute.' The portions of the charge claimed by respondent [defendant in error in the Court of Appeals] to constitute proper rules of law with respect to the assessment and ascertainment of damages by the jury, do not modify the rule laid down by the court herein complained of. These portions of the charge precede the portion of the charge complained of by petitioner for certiorari.

"Second. Petitioners assign error upon the ruling and decision of the Court of Appeals in said case, as set forth in the opinion of the said court affirming the judgment of the city court of Atlanta, and aver that the fourth ground of the amended motion for new trial complains of the charge of the court as follows: 'The children were entitled during their minority to the care, training, and education that might be afforded by their father if he had lived, and this is an item upon which damage may be allowed to them, so far as they are concerned, the law declaring that that is a matter that could be hired to be done by somebody else, and thus would constitute pecuniary loss.' It was the contention of the plaintiff in error in the Court of Appeals

that no evidence had been introduced at the trial showing or tending to show the value in money of the care, training, and education that might have been afforded to the children by their father, and that there was no basis by which the jury could estimate the pecuniary loss sustained by the children from being deprived of such care, training, and education through their father's death; but upon the other hand, the jury was left to speculation, conjecture, and to the various and diverse experiences of the members thereof, to determine what monetary loss should be allowed as damages to the children on account of the loss of the care, training, and education growing out of the death of their father. The Court of Appeals disposed of this ground along with other grounds of the amended motion for new trial, by the headnote decision hereinbefore set forth, to the effect that 'when considered in the light of the facts of the case and the entire charge of the court, none of the excerpts from the charge as complained of show reversible error.' Your petitioners respectfully submit that under the Federal employers' liability act of Congress, only pecuniary losses growing out of the father's death could be recovered by the children, and that while the deprivation of the care, training, and education by the father might constitute an element of damages in behalf of such children, it could only do so when reduced to a monetary value. In the absence of proof showing what it would cost in money to reproduce the care, training, and education which the children could have reasonably expected their father to afford them, it was error to charge the jury upon the question, and permit the jury by reason of such charge to award damages to the children on account of such alleged deprivation of the care, training, and education by the father. This charge, in the absence of proof upon the subject, did constitute reversible error, and petitioners aver that the Court of Appeals erred in holding that this excerpt from the charge, 'considered in the light of the facts of the case and the entire charge,' could have been made harmless. The effect of this portion of the charge was to open the floodgates of speculation by the jury, and to allow the natural sympathy engendered by the presence of the fatherless children in court to affect the verdict, which upon this branch of the damages sought to be recovered was without any evidence whatsoever to support it. The

sole basis upon which the children could recover damages for the deprivation of the father's care, training, and education, under the Federal employers' liability act as construed by the decisions of the Supreme Court of the United States, is that these elements have a monetary value, and can be pecuniarily appraised. Such being the case, it inevitably follows that it became necessary that the jury have evidence as to the value of the father's care, training, and education, and what it would cost to reproduce the same, in order that damages could properly and legally be awarded to the children for this particular kind of losses.

"The fifth ground of the amended motion is based upon an excerpt in direct line with the portion of the charge hereinbefore quoted from the fourth ground. This ground of the amended motion complains of the following charge to the jury: 'And so far as the children are concerned, you could estimate what their losses would be from the loss of the care, training, and education that they might have received from their father, and thus ascertain the total sum that would be the pecuniary losses of the wife and children.' This portion of the charge accentuates the portion of the charge complained of in the fourth ground, in that the jury is instructed that it can estimate what the losses to the children would be from the loss of the care, training, and education which they might have received from their father, and this estimate may be added to the sums arrived at with respect to actual contribution in determining the total losses to the wife and to the children. In the absence of any such proof, it is respectfully urged that the Court of Appeals erred in holding that these grounds of the amended motion did not constitute reversible error, for the reason that in the absence of any such proof the lower court must necessarily have erred in submitting to the jury this particular element of damage, and in allowing the jury to assess damages thereon, especially as through and by these particular excerpts the jury were instructed that this loss could be estimated, and the jury was left to speculation or its own ideas of the value of such service.

"Third. Petitioners assign error upon the decision of the Court of Appeals of the State of Georgia, affirming the judgment of the lower court, as set forth in the opinion thereof, and avers that the evidence demanded that a, new trial be granted,

and that therefore the Court of Appeals erred in its holding that the judgment of the lower court should be affirmed. In affirming the judgment of the lower court, the Court of Appeals overlooked the defense of assumption of risk as being a complete defense to the action. The record discloses (see evidence of Ivey, record, brief of evidence, page 78) that a cut of cars was moving upon the same track on which Tomlin undertook to couple the air-hose at .the time Tomlin started in between the cars for this purpose; that this cut of cars was in plain view of Tomlin, had he looked in the direction from which cuts of cars were to be expected. That he expected cars to be switched in, is alleged by the plaintiff in her petition. The evidence of H. E. Ivey, hereinafter quoted, brings this case clearly within the purview of the decisions of the Supreme Court of the United States. The language of Ivey is as follows: 'At the time I saw him put his light down and went (go) between the cars, the cut of cars (that) were moving, I seen him and seen the cars too. Saw the cut of cars and saw him practically at the same time. Whether the cars had been cut from this lead (No. 1 track), I could not say where they had been cut from. I saw them rolling about the time he went in between the cars which had been rolling from wherever it came down at.' The interpretation of this evidence, translated into language understandable by the layman, is as follows: 'At the time I saw Mr. Tomlin put his light down between the two tracks and go in between the cut of standing cars, the cut of cars which had been kicked by the switching engine to the east of Tomlin were moving toward the standing cut between which Tomlin started. I saw Mr. Tomlin and saw the cut of moving cars practically at the same time. Whether the particular cut of cars which I saw moving down cut from No. 1 lead track, I do not know. I saw them rolling about the time he went in between the standing cars, and at the time I saw them they had been rolling from wherever they had been kicked.' There is no shadow of a doubt that the cars could have been seen. One witness for the plaintiff (Puckett) stated (record, page 90): 'When on that lead and close to the lead you can see the cars from the shanty down there all the way up to the Southern Railway yard office, because those lights from Decatur Street throw the light on the tracks and the main line.' Another witness for the plaintiff

claims to have seen dust arising from the cars when they hit, and he was standing several hundred feet west of the point of the accident. The very language of Ivey, who is placed some distance further from the moving cut of cars than Mr. Tomlin, is to the effect that he saw the cut moving; so there can be no doubt from the testimony of the plaintiff that the cars moving on the track were plainly observable to Mr. Tomlin at the time he started in between the standing cut to couple the air-hose. This evidence, coupled with the undisputed evidence that it was the duty of car-inspectors to look out for themselves when coupling air-hose while trains were being built, brings this case within the purview of the decisions of the Supreme Court of the United States, hereinafter cited, the purport and applicability of which the Court of Appeals has completely overlooked in its decision in this case. These cases are as follows: Schlemmer v. Buffalo Railroad, 220 U. S. 590. In this case the Supreme Court of the United States, speaking through Mr. Justice Day, holds: 'In the absence of statute taking away the defense, or such obvious dangers that no ordinarily prudent person would incur them, an employee is held to assume the risk of the ordinary dangers of the occupation into which he is about to enter, and also those risks and dangers which are known or are so plainly observable that the employee may be presumed to know them; and if he continues in the master's employ without objection, he takes upon himself the risk of injury from such defects.' Citing Choctaw, Oklahoma etc. R. R. v. McDade, 191 U. S. 64. Boldt v. Pennsylvania R. R. Co., 245 U. S. 443. In this case the Supreme Court of the United States holds: 'At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence which are obvious or fully known and appreciated by him.' It is respectfully urged that had the Court of Appeals not ignored the construction placed upon the employers' liability act of Congress by the Supreme Court of the United States, and if it had applied such construction to the facts in this case, the result would have been the reversal of the judgment of the lower court, and the holding, as contended for by the plaintiff in error in that court, that the evidence demanded a judgment for the defendant railroads."

The defendant in certiorari, plaintiff in the trial court, insists

that the case should be dismissed from the dockets of this court, on the ground that the petition fails to comply with rule 2 of this court with regard to petitions for certiorari. It is insisted that the petition fails to comply with the rule which requires that errors of the Court of Appeals shall be plainly and specifically set forth; and also that the petition offends the rule which provides that "argument and brief of authorities must not be included in the petition, but must be submitted separately."

*McDaniel & Neely* and *Rembert Marshall,* for plaintiffs in error.

*Harwell, Fairman & Barrett,* contra.

GILBERT, J. 1. We will first consider the insistence that the petition fails to comply with rule 2 of this court, with reference to petitions for certiorari. This is in effect a motion to dismiss the case. In so far as applicable to the present discussion, rule 2 is as follows: "The petition must specify plainly the decision complained of, and the alleged errors. It will not be sufficient to set out the contentions and assignments of error made in the original bill of exceptions or motion for a new trial, but it shall be necessary to plainly and specifically set forth the errors alleged to have been committed by the Court of Appeals. . . Argument and brief of authorities must not be included in the petition, but must be submitted separately. In considering the question of the grant of the petition for certiorari, and, if granted, in disposing of the case, this court will only consider the questions raised in such petition." 153 *Ga.* 890. The amendment to the constitution of this State (Ga. Laws 1916, p. 19), providing for the writ of certiorari from this court to the Court of Appeals, was ratified on November 7, 1916. In the first case thereafter (*Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620, 91 S. E. 873) in which this court dealt with the subject, it was said: "When considered in connection with the whole constitutional scheme of two reviewing courts, and in the light of the history of the two courts, it is manifest that a careless exercise of the power would defeat the very purpose of the institution of the Court of Appeals. So exercised it would be but the prolongation of litigation by the interposition of an intermediate court, and might burden the dockets of this court with cases which the framers of the constitutional amendment intended ordinarily to terminate in the

Court of Appeals. This court, therefore, should be chary of action in respect to certiorari, and should not require by certiorari any case to be certified from the Court of Appeals for review and determination, unless it involves gravity and importance. It was not intended that in every case a complaining party should have more than one right of review." Presiding Justice Evans, who spoke for the court, discussed the practice of the Supreme Court of the United States in granting writs of certiorari, and the provision of the Congress of the United States providing for the exercise of the power by that court, after which he said: "The constitutional amendment of 1916 is so coincident in verbiage with the provision in the act of Congress for review by certiorari of decisions of the Circuit Court of Appeals by the Supreme Court of the United States, that we may indulge the thought that it was modeled by its framers on the act of Congress of 1891. At all events, the striking similarity in phraseology and the desirability of uniformity in construction impel us to follow, so far as the same may be applicable to our system of procedure, the construction placed on this language in the act of Congress by the Supreme Court of the United States." The decision in the *Yesbik* case has since been considered the chart and guide for this court in all subsequent cases where the rules there announced were applicable. In *King* v. *State,* 155 *Ga.* 707, at p. 712 (118 S. E. 368), Chief Justice Russell, speaking for the court, citing and approving the *Yesbik* case, said: "It was not the purpose of the amendment of 1916 to the constitution, whereby provision was made for the issuance of a writ of certiorari to the Court of Appeals, that such review was conferred upon all litigants as a matter of right. If this had been true, there would be but little reason for the existence of the Court of Appeals; for the losing party in practically every case, if dissatisfied with the judgment of the Court of Appeals, would demand and avail himself of the writ of certiorari, and this court would have to decide cases of which, under the constitution, the Court of Appeals has exclusive jurisdiction, as well as those in which jurisdiction has been reserved to the Supreme Court, just as this court did before the creation of the Court of Appeals." This ruling was concurred in by all of the Justices, and is now binding upon this court.

Rule 2 with regard to specifying error was considered and applied in *Parks* v. *Hardwick,* 158 *Ga.* 71 (2) (122 S. E. 553). In that case only one assignment of error was considered sufficient. The other allegations of the petition for certiorari were held insufficient "to present any question for decision by this court," because there was a failure to comply with rule 2. The application of rule 2, with regard to specifying error, again came before this court in *Jones* v. *Pacific Fire Insurance Co.,* 159 *Ga.* 248 (125 S. E. 470). The petition for certiorari was granted, but when the case was subsequently taken up for decision and when the petition was more closely scrutinized, it was found that the petitioner had failed to comply with rule 2. The only question involved was whether or not the court erred in refusing to reinstate a case previously nonsuited, and in which the facts were disputed; and this court said: "Thus the whole controversy became one of fact; and even conceding the law to be as contended by plaintiff, the petition for certiorari was improvidently granted. It failed to assign error on any question of law. No question of gravity or importance is involved in the case as it comes to this court. Only a disputed issue of fact is involved." The case of Southern Power Co. *v.* North Carolina Public Service Co., 263 U. S. 508 (44 Sup. Ct. 164, 68 L. ed. 413), was cited and followed. This case was also concurred in by all the Justices. The decision, therefore, is binding. The *Jones* case was followed in *Clark* v. *Fire Association of Philadelphia,* 159 *Ga.* 567 (126 S. E. 387), the court holding that there had been "no sufficient compliance" with rule 2, and the certiorari was dismissed. This also was concurred in by all the Justices. Rule 2, wherein it is stated that "this court will only consider the questions in such petition," was construed and applied in *Mitchell* v. *Owen,* 159 *Ga.* 690 (5), 701 (127 S. E. 122). After considering that portion of the rule as brought in question in that case, this court said: "Accordingly no question will be considered by this court in the present case except such as is plainly specified in the petition for certiorari as having been committed by the Court of Appeals. To follow a different rule, that is, to review and determine every question made in all cases as originally presented to the Court of Appeals, would be to consume a vast amount of time and labor much needed by the court for

contested issues, and to subject ourselves to the just criticism that in a great majority of instances time and labor was wasted upon questions no longer disputed or contested by the losing party."

All of the foregoing rulings of this court are in exact accord with decisions of the Supreme Court of the United States, and definitely establish the following principles applicable to the practice now under consideration. First: This court will follow the precedents established by the Supreme Court of the United States so far as the same may be applicable to our system of procedure. *Central of Ga. Ry. Co.* v. *Yesbik,* supra; *Jones* v. *Pacific Fire Insurance Co.,* supra. Second: Under the constitutional provision "It was not intended that in every case a complaining party should have more than one right of review." *Central of Ga. Ry. Co.* v. *Yesbik,* supra, *King* v. *State,* supra. Third: The writ of certiorari will only be granted where the case involves questions of great public concern or matters of gravity and importance. *Central of Ga. Ry. Co.* v. *Yesbik,* supra; *King* v. *State,* supra; *Jones* v. *Pacific Fire Insurance Co.,* supra; Law Ow Bew, ex parte, 141 U. S. 583 (12 Sup. Ct. 43, 35 L. ed. 868). In re Woods, 143 U. S. 202 (12 Sup. Ct. 417, 36 L. ed. 125) ; Law Ow Bew *v.* U. S. 144 U. S. 47 (12 Sup. Ct. 517, 36 L. ed. 340) ; American Construction Co. *v.* Jacksonville etc. R. Co., 148 U. S. 372 (13 Sup. Ct. 158, 37 L. ed. 486) ; Forsyth *v.* Hammond, 166 U. S. 506 (17 Sup. Ct. 665, 41 L. ed. 1095) ; Fields *v.* U. S. 205 U. S. 292 (27 Sup. Ct. 543, 51 L. ed. 807) ; Hamilton Brown Shoe Co. *v.* Wolf, 240 U. S. 251 (36 Sup. Ct. 269, 60 L. ed. 629). Fourth: "Upon review by certiorari the court is not called upon to consider questions not raised by the petition for the writ." Alice *v.* Houston Pasture Co., 247 U. S. 240, 242 (38 Sup. Ct. 496, 62 L. ed. 1096) ; Webster Electric Co. *v.* Splitdorf Electric Co., 264 U. S. 463 (44 Sup. Ct. 342, 68 L. ed. 792). *Central of Georgia Ry. Co.* v. *Yesbik,* supra; *King* v. *State,* supra, at p. 712; *Jones* v. *Pacific Fire Insurance Co.,* supra. Fifth: After the grant of a writ of certiorari, which is generally ex parte, the writ will be dismissed if it is ascertained from the argument of the case or subsequent examination that the questions involved are not of great public concern or gravity and importance. *Jones* v. *Pacific Fire Insurance Co.,* supra; U. S. *v.* Rimer, 220 U. S. 547 (31 Sup. Ct. 596, 55 L. ed. 578) ; Furness, Withy & Co.

*v.* Yang-Tsze Insurance Association, 242 U. S. 430 (37 Sup. Ct. 141, 61 L. ed. 409); Layne *v.* Western Well Works, 261 U. S. 387 (43 Sup. Ct. 422, 67 L. ed. 712); Southern Power Co. *v.* North Carolina Public Service Co., 263 U. S. 508 (44 Sup. Ct. 164, 68 L. ed. 413). In addition to the above, this court adopted a rule effective January 1, 1923, providing in part: (a) *"The petition must specify plainly the decision complained of and the alleged errors. It will not be sufficient to set out the contentions and assignments of error made in the original bill of exceptions or motion for a new trial, but it shall be necessary to plainly and specifically set forth the errors alleged to have been committed by the Court of Appeals.* (b) *Argument and brief of authorities must not be included in the petition, but must be submitted separately."* 153 *Ga.* 890.

(a) In paragraph 6 of the petition for certiorari the applicant undertakes to assign error on the ruling of the Court of Appeals. In the "first" subdivision the petitioners "assign error" upon the decision of the Court of Appeals as contained in the first headnote, which is quoted in the statement preceding this opinion. While the petition uses the phrase "assigns error" and "said decision is erroneous," these are general terms, and of course do not plainly specify any particular error. To say that the decision is erroneous because " (1) a verdict could have been rendered for the defendant upon the facts," and " (2) a verdict according to defendant's contentions was demanded upon the ground of the assumption of risk," and " (3) a verdict for the amount of the contribution to the beneficiaries during the years which each would have been entitled to such benefit, and not beyond, might have been rendered," and " (4) a verdict greatly reduced by contributory negligence of the decedent might have been rendered, there being evidence of gross contributory negligence in the aspect of the case most favorable to plaintiff," obviously does not point out any "questions of great public concern, or matters of gravity and importance." The only questions involved are questions of fact, all of which, as shown by the brief of evidence, are disputed issues and present purely jury questions, though the petition, as stated above, insists "that a verdict according to defendant's contentions was demanded upon the ground of assumption of risk." This insistence, in our opin-

ion, is not borne out by the brief of evidence. Under the facts of the case that was purely a jury question. The next reference in the petition to error is the statement, "It is respectfully urged that reversible error was committed by the trial court in its charge, and that this error was never corrected in the manner provided according to the decisions of the Supreme Court of Georgia." Here no specific error is pointed out. The petition next contains the statement, "The seventh ground of the amended motion for new trial complains of the charge of the court upon the measure of damages under the employer's liability act of Congress, as follows," and then follows a lengthy extract which is found to be a reproduction of the seventh ground of the amended motion. Following this excerpt the petition states: "In giving this instruction the court committed clear error of the most hurtful character, since the jury was instructed to arrive at the gross amount of damages to which the respective beneficiaries would be entitled, by combining the annual losses of the beneficiaries and by multiplying the combined annual losses by the combined expectancies of the beneficiaries," and then follows the latter portion of the above excerpt beginning at the words, "then by multiplying the total losses," etc. The petition then states that "this extract from the charge can not be read without revealing the glaring error which it embodies. It was properly made a basis of ground for new trial, and it is respectfully submitted that such error" was not cured by subsequent instructions of the court. This is followed by citation of and quotations from a number of decisions of this court, as shown in the statement preceding.

If there is any specific error pointed out thus far, it must be found in the statement that the jury were instructed to find the gross amount of damages to which the respective beneficiaries would be entitled, by combining the annual losses of the beneficiaries and by multiplying the combined annual losses by the combined expectancies of the beneficiaries. The petition, in the first subparagraph, offends the rule against including argument and brief of authorities in the petition, and for that reason the first subparagraph presents no question for consideration. It is insisted in the motion for a rehearing that the citation of authority in this paragraph of the petition was really "not by way of argument and brief of authorities, but as an integral and substantive

part of the assignment itself." The petition, in our opinion, does not authorize that construction. The rule is futile if it can be avoided in that manner. If so construed in this case, counsel in any other case would be entitled to include briefs of authority and argument in the petition, under the guise of a clarification or elaboration of the petition and by merely denominating the insertion as "an integral and substantive part of the assignment itself." Moreover, in this instance the authorities cited do not refer to the issue made by the assignment of error. They support the argument that the error committed by the court was not corrected in a subsequent portion of his charge, as the law required. We think it is manifest that there was failure to comply with rule two in this respect. Again, the issue raised in this paragraph of the petition was as to whether or not the trial court erred in instructing the jury as to the method of computing the amount of damages in the event of a recovery. In any view of this question, we are unable to see how it is of gravity and importance. It has been the unbroken practice of the Supreme Court of the United States to dismiss writs of certiorari previously granted, whenever, upon final examination, it is found that the same do not present questions involving questions of great gravity and general importance. In U. S. *v.* Rimer, supra, the petition for certiorari was granted upon the belief that "the decision below involved a principle concerning the collection of internal revenue taxes of far-reaching importance." When the court came to consider the case for decision, the conclusion was reached that it was neither from its character nor importance within the scope of the grant of power given by the judiciary act of 1891 to review by certiorari, and the writ was accordingly dismissed. In Furness, Withy & Company *v.* Yang-Tsze Insurance Association, supra, it was said: "Petitions for writs of certiorari are at the risk of the parties making them, and whenever in the progress of the cause facts develop which if disclosed on the application would have induced a refusal, the court may upon motion by a party or ex mero motu dismiss the writ." In Layne *v.* Western Well Works, supra, a writ of certiorari was granted to settle a supposed conflict of decisions between two circuit courts of appeal concerning the validity and scope of a patent. When the case was examined for decision, it was found that no conflict

existed, and the writ of certiorari was dismissed as improvidently granted. In that case it was said: "It is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal." In Southern Power Co. v. North Carolina Public Service Co., supra, the writ of certiorari was granted on the belief that the decree rendered by the trial court would deprive petitioner of due process of law. On the argument of the case it developed that the controverted question was whether the evidence sufficed to establish actual dedication of petitioner's property to public use—primarily a question of fact; and accordingly the writ of error was dismissed as improvidently granted.

In most of these cases the Supreme Court of the United States was dealing with petitions for certiorari to the Circuit Court of Appeals of the United States. The Circuit Court of Appeals, as constituted, is more of an intermediate court than the Court of Appeals of Georgia. The latter court, as we have shown above, was intended, under the constitution, to be a court of final resort except where the contrary was expressly stated. It has been declared by the Supreme Court of the United States: "The jurisdiction of this court to review judgments and decrees of the Circuit Courts of Appeals on certiorari under § 240, Jud. Code, is to be exercised sparingly and only in cases of peculiar gravity and general importance and in order to secure uniformity of decision." Hamilton Brown Shoe Co. v. Wolf, supra. This is an ordinary damage suit where a recovery is sought for the negligent homicide of an employee, and there is nothing of peculiar gravity or general importance. In no sense could the decision be of general public importance, whatever may have been decided on the question whether the trial court erred in instructing the jury as to the method of computing damages. It is insisted by counsel in the motion for rehearing that the dismissal of the writ will preclude the petitioners "from their right to seek review by certiorari in the Supreme Court of the United States." Whether this is true we express no opinion. The controlling question is whether the petition filed in this court complies with the rules

heretofore adopted, and states a case which, under the rulings of this court and of the Supreme Court of the United States, is entitled to be decided. We think the Supreme Court of the United States, as well as this court, has decided that question. Without reiterating the rulings made by this court, we refer to two cases in which the Supreme Court has considered petitions for certiorari involving questions very closely akin to the questions in this case. In the case of In re Woods, supra, that court said: "Whether the law in respect of recovery by a servant against his master for injuries received in the course of his employment was properly applied on the trial of a case does not fall within the category of questions of such gravity and general importance as to require a review of the conclusions of the Circuit Court of Appeals in reference to them." In Davis *v.* Currie, 266 U. S. 183 (45 Sup. Ct. 88, 69 L. ed. 234), certiorari was granted to review a judgment of the Supreme Court of South Carolina. The petition for certiorari presented a single question: "Can damages for humiliation and wounded feelings be awarded the respondent against the petitioner, the United States Railroad Administration, under the provisions of the Federal control act, the proclamations of the President, and the general orders of the director-general pursuant thereto?" At the hearing counsel relied on the following: "'The judgment against the director-general of railroads for wounded feelings and humiliation arising out of a wanton, willful, and malicious act of his servant is unauthorized, involving essentially the infliction of a penalty upon the government.' The argument was that although the trial court distinctly limited the jury to actual damages, nevertheless it necessarily follows from the size of the verdict that punitive damages were assessed against and a penalty was imposed upon the United States." The writ was dismissed.

(b) The second subparagraph complains that the Court of Appeals erred in holding that the trial court did not err in the following excerpts from the charge to the jury: (1) "The children were entitled during their minority to the care, training, and education that might be afforded by their father if he had lived, and this is an item upon which damage may be allowed to them, so far as they are concerned, the law declaring that that is a matter that could be hired to be done by somebody else, and

thus would constitute pecuniary loss." (2) "And so far as the children are concerned, you could estimate what their losses would be from the loss of the care, training, and education that they might have received from their father, and thus ascertain the total sum that would be the pecuniary losses of the wife and children." The petition states that these excerpts were made the basis of grounds four and five of the motion for a new trial. The sole criticism of these excerpts, as shown from the statement preceding, is to the effect that no evidence had been introduced at the trial, showing or tending to show the value in money of the care and training and education that might have been afforded to the children by their father, and that there was no basis by which the jury could estimate the pecuniary losses sustained by the children from being deprived of such care, training, and education through their father's death, but upon the other hand the jury was left to speculation, conjecture, and the various and diverse experiences of the members thereof to determine what monetary loss should be allowed as damages to the children on account of the loss of care, training, and education, growing out of the death of their father. In the petition for certiorari and in the motion for rehearing it is insisted that these grounds of the petition with reference to recovery in behalf of the minor children involve "a construction of the Federal employer's liability act," and that while an examination of the evidence is necessary to determine the issue, "nevertheless a question of law for decision by the appellate court was made." When we examine the charge of the trial court we find that the law in regard to the Federal employer's liability act was given to the jury in exact accord with the construction placed upon it by the Supreme Court of the United States as contended for by these petitioners; therefore it is clear that no question involving the construction of that law is involved. The only question in issue is whether or not there was evidence before the jury on that question, which authorized the court to instruct the jury on the subject. Only a question of fact which requires examination of the entire brief of evidence is raised to ascertain the existence or non-existence of evidence bearing upon only one branch, and at that necessarily a minor branch, of the total recovery in the case. We have no means of ascertaining whether the jury in-

cluded any recovery on this branch of the case or not; but if they did, we do not understand this to be a question of gravity and importance, as contemplated in the *Yesbik* case or the cases from the Supreme Court of the United States above cited.

(c) The third subparagraph contains the following: "Petitioners assign error upon the decision of the Court of Appeals of the State of Georgia, affirming the judgment of the lower court, as set forth in the opinion thereof, and avers that the evidence demanded that a new trial be granted and that therefore the Court of Appeals erred in its holding that the judgment of the lower court should be affirmed." The petition then alleges that the "Court of Appeals overlooked the defense of assumption of risk as being a complete defense to the action." Then follow extracts from the evidence of one of the witnesses for the plaintiff, wherein this witness testifies in effect that at the time of the injury to the deceased by the railway cars he saw the deceased and the cars rolling toward him and saw the deceased about the time he went in between the cars to make the coupling, describing the surroundings in the railroad yard; from which it is argued that there was no obstruction preventing the deceased from seeing the cars and, therefore, knowing the speed at which the cars were moving. From this it is argued that the deceased voluntarily, with knowledge of all of the facts, assumed the risk incident, and that his injury was the result of his own negligence and not that of the defendants. Then follow quotations from several decisions of the Supreme Court of the United States, from which it is argued in the petition that "had the Court of Appeals not ignored the construction placed upon the employer's liability act of Congress by the Supreme Court of the United States, and if it had applied such construction to the facts in this case, the result would have been the reversal of the judgment of the lower court, and the holding as contended for by the plaintiff in error in that court that the evidence demanded a judgment for the defendant railroads." In view of the failure to comply with rule 2 in regard to including argument and brief of authorities, we hold that this subparagraph of the petition can not be considered. Moreover, here again no question of gravity and general importance is involved; only a question of fact as to

whether the evidence supports the verdict. No construction of the Federal employer's liability act is involved.

Applications for certiorari have nearly doubled in number within the past four years. A lax enforcement of construction rules applicable thereto would naturally further increase the number. Manifestly this would be contrary to public interests, as well as contrary to the true interests of the constitution. It would tend to convert the Court of Appeals into a mere intermediate court, and to overwhelm this court with the examination of evidence. Notwithstanding the disappointment that occasionally follows a failure to secure an additional review in this court, it is of first importance to all concerned that we adhere to rules and decisions which conduce to uniformity of procedure.

2. It follows from what is said above, that the case is dismissed on the ground that the petition for certiorari was improvidently granted.

3. The third headnote does not require elaboration.

*Writ of certiorari dismissed. All the Justices concur, except Russell, C. J., who dissents.*