## THE STATE *v.* B'GOS.

No. 8541.  SEPTEMBER 13, 1932.

*Walter C. Hartridge, solicitor-general,* and *Julian Hartridge,* for plaintiff in error.

*Aaron Hravitch,* contra.  *Reuben R. Arnold,* for person at interest, not party to the record.

HILL, J.  Nick B'Gos was convicted in the city court of Savannah upon an accusation which alleged that he had operated a gambling device called "clearing-house," known as a lottery, the second count alleging that he operated a gambling scheme or device other than a lottery. The defendant was found guilty by a jury in a general verdict, and was sentenced by the trial court. He made a motion for new trial on the general grounds, which was denied, and he brought his case by writ of error to the Court of

Appeals. That court reversed the judgment, on the ground that the accusation was "legally repugnant" in that the evidence only sustained a finding of guilty on one count and that the counts negatived each other. The State of Georgia made a motion for rehearing in the Court of Appeals, which was granted, and upon the rehearing its previous ruling was affirmed. The State of Georgia thereupon brought an application for a writ of certiorari to have the Supreme Court assume jurisdiction of the case for the purpose of reversing and setting aside both rulings of the Court of Appeals. The writ was granted. On the call of the case in this court the defendant in certiorari filed a motion to dismiss the application made by the State of Georgia for a writ of certiorari directed to the Court of Appeals, asking the Supreme Court to review and reverse the findings of that court in granting a new trial to the defendant in certiorari, upon the ground that the Supreme Court is without jurisdiction to entertain an application for a writ of certiorari to review the findings of the Court of Appeals where the application is filed by and on behalf of the State of Georgia in a criminal proceeding.

Upon consideration we sustain the motion and dismiss the petition for certiorari, for the reasons hereinafter given. The sole question to be decided in this case is whether the State of Georgia has the right to an appeal or to seek a writ of certiorari to the Court of Appeals in a criminal case, where the judgment of that court has been favorable to the defendant. It is insisted by learned counsel for the State of Georgia, that, since the amendment to the constitution of Georgia (Ga. L. 1916, p. 19), our constitution provides that "It shall also be competent for the Supreme Court to require by certiorari or otherwise *any* case [italics ours] to be certified to the Supreme Court from the Court of Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court." And it is argued that the language quoted above means exactly what it says, "all cases," and certain decisions of this court are cited to sustain the contention of the plaintiff in certiorari, among others, *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873), where it was held: "Under the constitutional amendment of 1916, the power of the Supreme Court in certiorari extends to all cases decided by the Court of Appeals." And it is insisted that the decision in the

*Yesbik* case points out three things which were provided in this constitutional amendment to secure uniformity or concurrence in decisions: (1) that the decisions of the Supreme Court shall bind the Court of Appeals as precedents; (2) that the Court of Appeals was empowered to certify to the Supreme Court any question upon which it desired instruction, and was bound by the instruction on the question certified; (3) that the Supreme Court could require, by certiorari or otherwise, any case to be certified to the Supreme Court from the Court of Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court. In *King* v. *State,* 155 *Ga.* 707, 712 (118 S. E. 368), in an opinion of this court delivered by Chief Justice Russell it was said: "It was not the purpose of the amendment of 1916 to the constitution, whereby provision was made for the issuance of a writ of certiorari to the Court of Appeals, that such review was conferred upon all litigants as a matter of right." The above language was quoted by Mr. Justice Gilbert in *L. & N. R. Co.* v. *Tomlin,* 161 *Ga.* 749, 759 (132 S. E. 90). It was also pointed out in the *Yesbik* case by Mr. Justice Evans, speaking for the court, that "It was not intended that in every case a complaining party should have more than one right of review." It was also said that "This provision was manifestly intended to vest in this court a comprehensive power, extending to the review of any decision pronounced by the Court of Appeals." It is argued that the entire matter of review by certiorari should be left within the power and discretion of the Supreme Court, and that there is nowhere to be found within the provision any limitation whatever as to what case or cases the Supreme Court could consider upon certiorari.

We can not agree to the conclusions reached by able counsel for plaintiff in certiorari. In the view we take of this case there is no conflict between the previous decisions rendered by this court and the position we take in the present case. It will be noted that in each case cited by counsel for the plaintiff in certiorari the language is "any *case*" [italics ours] may be certified to the Supreme Court, and in neither the constitution nor any of the decisions cited is it stated that in a criminal case the State of Georgia is authorized to appeal, or to file a petition for certiorari in the Supreme Court to the Court of Appeals. In declaring what laws

are of force in this State, among others, it has been held that the common law of England, and such of the statute law as was usually in force before the revolution, within certain limitations, was adopted by the law of Georgia, and is of force in this State within those limitations. Act of 1784, Cobb's Dig. 721; *Flint River Steamboat Co.* v. *Foster*, 5 *Ga.* 194 (5) (48 Am. D. 248). And according to the common law it has been held by numerous authorities that a writ of error does not lie in a criminal case at the instance of the State. For authorities to this effect see *State* v. *Jones*, 7 *Ga.* 422, 424. In 8 R. C. L. 168, § 162, it is stated that "The State has no right to sue out a writ of error on a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered on a verdict of acquittal or on the determination by the court on a question of law." And in 17 C. J. 39, § 3310(b), it is said: "Under the common law as generally understood and administered in the United States, the State has no right to a writ of error, to an appeal, or to exceptions in a criminal case unless it is expressly conferred by statute." As far back as the case of *State* v. *Jones*, supra, in a very able and well considered opinion Judge Nisbet said: "The act of the legislature organizing this court does not, in our judgment, authorize a criminal case to be reviewed by this court by writ of error, at the instance of the State. It declares, 'All causes of a criminal or civil nature may, for alleged error in any decision, sentence, judgment, or decree of any such superior court, be carried up from the counties of the respective districts aforesaid, to the judges of the Supreme Court, at the respective terms thereof for such district, to be by said Supreme Court revised and determined.' The language of this clause is held as conferring the right upon the State. It certainly asserts that all causes of a criminal nature may be carried up to the Supreme Court, but it does not declare by whom—it does not say by the State. If, however, it be conceded that it confers the right equally upon the State and the defendant, yet this generality of meaning is qualified by subsequent provisions, so as, by fair implication, to limit the right to the defendant. In prescribing the manner in which decisions, &c., in criminal cases shall be taken up, provision is made applicable to the defendant—none is made for the State eo nomine, and that made for the defendant is not applicable to the State. The inference from these

facts is irresistible, that the law does not, in any of its provisions, contemplate the State, and that it leaves the State, in this regard, subject to the general law. For example, it declares that 'any criminal cause may be carried up to the Supreme Court, on a bill of exceptions in writing, specifying the error or errors in law complained of, to be drawn up by the party, his counsel or attorney,' &c., &c. If the view I have taken, that in a criminal cause the State can not in any just sense be considered a party, then the word party does not embrace the State, and applies alone to the defendant. The use of the personal pronoun *his* indicates a person, to wit, the defendant. Neither in law language nor in common parlance is it usual to indicate a State by the use of a personal pronoun of the masculine gender. The limitation of the meaning of the word *party* to the defendant is yet more clearly established by the way and the connection in which it is used, when the act makes provision for recognizance. It declares, 'and if in a criminal case, where the offense is by law bailable, the *party* complaining of error shall enter into recognizance, with security, &c., conditioned for the appearance *in person* of such party complaining, to abide the final order, judgment, or sentence of said court, and if the offense be not bailable, or if the *party* be sentenced to imprisonment in the penitentiary,' &c., &c. Clearly all this refers to the defendant. The State can not appear in person, is not liable to sentence of imprisonment, or any other sentence, nor is she capable of any offense bailable or otherwise. These provisions are inapplicable to the State, and in them the State is not contemplated. Again, in requiring notice of the signing of the bill of exceptions to be given, in civil cases, the act directs the notice to be given to the adverse party or his counsel—referring to both parties; but in criminal cases the notice is directed to be given to the attorney or solicitor-general, who represents the State. Nothing anywhere is said about notice to the defendant in criminal cases, when the State brings the writ. This shows that the State was not expected to bring the writ. If it can, then the legislature is justly chargeable with the culpable injustice of authorizing the State, in criminal cases, to take a bill of exceptions without giving notice of its being signed. Act of 1845, § 4. 1 *Kelly*, 6."

The constitution provides that no person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his

or her own motion for new trial after conviction, or in case of mistrial. Civil Code (1910), § 6364. Either party in any civil cause, and the defendant in any criminal proceeding, in the superior courts of this State, may except to any judgment or decision of the court or of the judge thereof. § 6139. It will be observed that there is no provision of law dealing with either the right to the State or the defendant in inferior judicatories to appeal. It will also be observed that there is no *express* language giving the right either to the defendant or to the State to appeal. But it has been held many times that the State can not appeal. The Civil Code (1910), § 5180, states the general rule to be that the writ of certiorari will lie for the correction of errors committed by justices of the peace, corporation courts, or council, or any inferior judicatory, or any person exercising judicial powers. The language employed in this section would seem to apply generally to all cases without exception, just as it is claimed here that the Supreme Court can review the decisions of the Court of Appeals in any case. In fact it is provided in the constitutional amendment generally, and in Code § 6514, that the superior court shall have power to correct errors in inferior judicatories by writ of certiorari, and there is apparently no limitation upon this constitutional right to correct errors. It is not confined to applications by the defendant or by the State, and yet it has been repeatedly held, notwithstanding this general right to correct errors in inferior judicatories by writ of certiorari, that the superior court is without jurisdiction to review the judgment of an inferior court on petition by the State or a municipality. The provision of the constitution (§ 6502), that it shall be competent for the Supreme Court "to require by certiorari or otherwise any case to be certified to the Supreme Court from the Court of Appeals for review and determination," would not vary the general fundamental rule that the State can not appeal, but that such appeals or applications in criminal cases must be made by the defendants and not by the State; and it will be observed also that the language of the constitution conferring jurisdiction upon the Supreme Court over petitions for certiorari to the Court of Appeals deals with the general *classes of cases,* and does not attempt to deal with the right of any particular litigant to have a decision reviewed. It is true that it confers jurisdiction by certiorari in "any case," but that provision is silent on the question as to *what*

*party* has the right to have "any case" reviewed. It will be noted that the language of the constitution does not say that "any case" may be reviewed on petition of any specific party. The Supreme Court has conferred on it jurisdiction in any criminal case, provided the proper party appeals from the decision or judgment complained of, and so the jurisdiction may depend upon who it is that appeals.

It is contended that the Court of Appeals under the law has the right to certify a question or questions to the Supreme Court, and that this is the same thing as giving the Supreme Court the right to grant a certiorari upon petition by the State. But we can not agree to this view. It is true that the Court of Appeals can certify a question to the Supreme Court under the constitution. Civil Code, § 6506. It provides: "Where a case is pending in the Court of Appeals and the Court of Appeals desires instruction from the Supreme Court, it may certify the same to the Supreme Court, and thereupon a transcript of the record shall be transmitted," etc. In a case like that, the Court of Appeals is merely transferring the record and the certified questions to the Supreme Court for its decision; but it will be noted that there is no *appeal* by either party. Furthermore, in such case the Court of Appeals has not made any decision which can be appealed from. That court of its own motion has simply asked certain legal questions, and the questions are answered by the Supreme Court to the Court of Appeals, and from those answers the Court of Appeals makes its own decision in accordance therewith. But the case under consideration is one where the Court of Appeals has definitely and finally decided the case in favor of the defendant, the effect of which is to acquit the defendant, just as much so as the verdict of the jury can acquit him; and it is this judgment in favor of the defendant from which the State can not appeal. But, as already stated, in the case of certified questions there has been no judgment in favor of or adverse to the defendant by the Court of Appeals; and consequently there is nothing from which either party can appeal. The law which declares that the State has no right of appeal in any criminal case from any judgment of the court has no application to a case where the Court of Appeals has certified certain questions to the Supreme Court.

In *Cranston* v. *Augusta,* 61 *Ga.* 572, it was held that the power of a municipal corporation to exercise police jurisdiction is a power

delegated by the State. Hence the corporation as a party to a criminal proceeding stands in place of the State. The State can not have a writ of certiorari, or a writ of error, to review a judgment of discharge by its courts. Citing *State* v. *Jones,* 7 *Ga.* 422; *State* ex rel. *Tucker* v. *Lavinia,* 25 *Ga.* 311. And in *State* v. *Johnson,* 61 *Ga.* 640, it was likewise held that a writ of error does not lie in behalf of the State in a criminal case. In that case Johnson was.indicted for the offense of murder, and was convicted. Motion was made by the defendant to arrest the judgment on certain grounds. The trial court sustained the motion and arrested the judgment. The State excepted; and this court dismissed the writ of error, quoting § 4251 of the Code of 1873 to the effect that either party in a civil case, and the defendant in any criminal proceeding, might except to any judgment of the court. In *State* v. *Jones,* 7 *Ga.* 422, from which we have already quoted from Judge Nisbet's able opinion, he said: "The rule seems to be well settled in England that in criminal cases a new trial is not grantable to the Crown after verdict of acquittal, even though the acquittal be founded on the misdirection of the judge. This is the general rule, and obtains in the States of our Union; it excludes a rehearing after acquittal upon errors of law, and therefore, it would seem, denies also a rehearing upon judgments of the court upon questions of law, even when the jury have not passed upon the guilt or innocence of the prisoner. If the effect of the judgment is a discharge, there can be no rehearing, either by new trial or writ of error. Indeed it may be stated as a general rule, that in criminal cases, upon general principles, errors are not subject to revision at the instance of the State." In the *Jones* case there was no verdict of the jury, but the indictment was quashed by order of the court, and it was from this judgment that the State undertook to appeal the case. It was held that the refusal to give the State the right of appeal did not depend alone upon the principle that no one shall be put in jeopardy of life more than once for the same offense. The decision was put upon the broader principle as expressed in the following language used by Judge Nisbet: "It may be said, too, that the rule of the common law, denying the State a new trial, contemplates cases only where there has been a verdict of acquittal, and can not apply to errors in law committed by the court; whereas here there was no verdict. We have seen that a new trial will not be given in

cases where the verdict is the result of the misdirection of the court. Errors in law, therefore, can not be reached by a new trial at the instance of the State. But, farther, the common-law maxim and the constitution are founded in the humanity of the law, and in the jealous watchfulness over the rights of the citizen when brought in unequal contest with the State. It is doubtless in the spirit of this benign rule of the common law embodied in the Federal constitution—a spirit of liberty and justice, tempered with mercy, that, in several of the States of this Union, in criminal causes a writ of error has been denied to the State."

In another case decided by this court, *State ex rel. Tucker* v. *Lavinia,* 25 *Ga.* 311, it was again decided that a writ of error does not lie to the Supreme Court in a criminal case at the instance of the State. In that case Lavinia was tried for a certain offense, and was acquitted. An effort was made by the State to obtain a certiorari from the superior court. The superior court dismissed the certiorari on the ground that the defendant had been acquitted by the proper tribunal, and that the court had no power to order a rehearing at the instance of the State. Judge Lumpkin, who delivered the opinion of the court, did not decide the question as to whether the superior court could have acquired jurisdiction upon a petition for certiorari by the State, but he decided the question that the State could not have a writ of error from the decision of the superior court to the Supreme Court. And so this court has decided numerous times that the superior court can not review, at the instance of the State, a decision of a lower court on a writ of certiorari. *Eaves* v. *State,* 113 *Ga.* 749 (39 S. E. 318), was a case where the defendant was indicted for selling liquor. He was found guilty, and his motion for new trial was overruled. He excepted to the three rulings contained in the motion for new trial. The State filed a cross-bill of exceptions upon the overruling of a motion made by the solicitor-general to dismiss the motion for new trial. This court held, Chief Justice Simmons delivering the opinion, that the State could not file a cross-bill of exceptions, quoting § 5527 of the Civil Code of 1895, which was then in force, and which is to the effect that when the successful party to any cause which is carried to the Supreme Court by the unsuccessful litigant files a cross-bill of exceptions the questions made by the cross-bill shall be heard, with certain exceptions, and determined. It will be noticed that

the language of this section gives the successful party to any cause a statutory right to file a cross-bill of exceptions. In the *Eaves* case the State was the successful party; and if the language of that section had been given merely a strict construction, the State was given the express right to file a cross-bill of exceptions, as the defendant had a right to file a main bill of exceptions. And yet this court, on the general principle applicable to criminal cases, declared that this language in the statute above stated would not be applied to the State; and the decision as rendered concluded as follows: "In view of the general law which denies the right of the State to a writ of error in a criminal case, of the absence of any express provision for a cross-bill of exceptions in behalf of the State in such a case, and of the use of such language with reference to cross-bills of exception generally as would seem to exclude the State in criminal cases, we hold that the State is without any right to a writ of error in a criminal case by either main or cross-bill of exceptions."

As we have already observed, there is no statute of this State, so far as we are aware, where the State is expressly granted the right of appeal or the right to certiorari in cases like the present. In *Commissioners of Pilotage* v. *Tabbolt, 72 Ga.* 89, a pilot was tried before the commissioners of pilotage of the port of Brunswick for dereliction of duty, and was convicted. He appealed to the superior court, and on the trial before a jury in that court he was acquitted. It was held that the commissioners of pilotage could not make a motion for a new trial or take a writ of error in their own names. In *Mayor &c. of Hawkinsville* v. *Ethridge, 96 Ga.* 326 (22 S. E. 985), the defendant was convicted before the police court of Hawkinsville for violation of an ordinance of that town, upon an accusation of the offense of draying in the corporate limits. He was sentenced to work upon the public streets of the city for sixty days, with the alternative of paying a fine of $60 and the costs of the proceedings. He applied to the superior court for a writ of certiorari, and when the case was called for trial counsel for the City of Hawkinsville moved to dismiss the certiorari. The judge overruled the motion to dismiss, and to this judgment the Mayor and Council of Hawkinsville excepted and by writ of error presented for review the judgment overruling its motion to dismiss the petition for certiorari. There was therefore presented for decision purely a question of law. This court said, through Mr. Justice Atkinson

delivering the opinion: "This court can only review the judgment of the lower court by a bill of exceptions; and inasmuch as no provision is made by the law by means of which the State can present and have transmitted here a bill of exceptions in a criminal cause, if there were no other legal or constitutional impediment to the reversal of a judgment rendered in favor of the defendant in the court below, this one difficulty is insurmountable." The writ of error was dismissed. In 17 C. J. 47, it is stated: "As a general rule, the State does not have the right to appeal from the judgment of an intermediate appellate court in criminal cases, unless such right is either expressly or impliedly conferred by the constitutional or statutory provisions." No such right by the State is granted expressly either in the constitution or statutes of Georgia. But it is insisted that the present constitution of the State authorizes a writ of ceriorari in the Supreme Court in "any case" decided in the Court of Appeals. The reply to that argument is that the framers of the constitution were dealing only with the nature of the cases to be reviewed, and not with the right of any particular party or litigant to appeal. Judge Nisbet, in the *Jones* case, supra, in dealing with a somewhat similar provision in the original act creating the Supreme Court, which gave the right to appeal in "all causes of a criminal or civil nature," said: "The language of this clause is held as conferring the right upon the State. It certainly asserts that all causes of a criminal nature may be carried up to the Supreme Court, but it does not declare by whom—it does not say by the State." So we hold that the language "any case" does not give any express right to the State to appeal.

In harmony with the foregoing decisions of our court, see State *v.* Simmons, 49 Ohio St. 305 (31 N. E. 34), and Mick *v.* State, 72 Ohio St. 388 (74 N. E. 284). The Supreme Court of the United States has also passed upon this question in the Sanges case, 144 U. S. 310 (12 Sup. Ct. 609, 36 L. ed. 445), in which the Circuit Court of the United States for the Northern District of Georgia, sustained a demurrer and quashed an indictment, and the government sought a writ of error. It was held: "A State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal or upon the determination by the court of a question of

law." In rendering the opinion of the court Mr. Justice Gray used the following language: "But whatever may have been, or may be, the law of England upon that question, it is settled by an overwhelming weight of American authority that the State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon determination by the court of a question of law. In a few States, decisions denying a writ of error to the State after judgment for the defendant on a verdict of acquittal have proceeded upon the ground that to grant it would be to put him twice in jeopardy, in violation of the constitutional provision. See State v. Anderson (1844), 3 Smedes & M. 751; State v. Hand (1845), 6 Ark. 169 [42 Am. D. 689]; State v. Burris (1848), 3 Texas, 118; People v. Webb (1869), 38 Cal. 467; People v. Swift (1886), 59 Mich. 529, 541. But the courts of many States, including some of great authority, have denied, upon broader grounds, the right of the State to bring a writ of error in any criminal case whatever, even when the discharge of the defendant was upon the decision of an issue of law by the court, as on demurrer to the indictment, motion to quash, special verdict, or motion in arrest of judgment." Mr. Justice Gray referred to the decision in the *Jones* case in 7 *Ga.*, from which we have liberally quoted, and which Mr. Justice Gray, in prefacing his quotation from Judge Nisbet's opinion, said: "In an able and well considered opinion delivered by Judge Nisbet."

After careful consideration of the important question involved here, we reach the conclusion that the motion made to dismiss the petition for certiorari on the ground that the Supreme Court has no jurisdiction of the case should be sustained, and the petition for certiorari is therefore

*Dismissed. All the Justices concur, except Russell, C. J., and Gilbert, J., who dissent.*

RUSSELL, C. J., dissenting. The precise question involved in this case has never been adjudicated. The cases to which reference has been made in the opinion of the majority deal with issues which arose under the constitution of Georgia before the amendments of 1916, which define the precise jurisdiction of the Supreme Court of Georgia, and of the Court of Appeals of Georgia, respectively.

Prior to that time there was no provision for the writ of certiorari which enabled the Supreme Court to review any decision made by the Court of Appeals. It is plain from all of the decisions which have been cited that the court in these cases had in mind at all times the constitutional provision, which even prior to the settlement of Georgia had been a fixed principle of the common law, that "No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial." It is apparent from the decisions of this court and of the Supreme Court of the United States, holding that writs of error do not lie in behalf of the State to the Supreme Court of the State, and that no writ of error lies to the Supreme Court of the United States in behalf of the United States, are based upon the fundamental common-law rule (as well as the later constitutional inhibition) against putting a citizen twice in jeopardy. If the question now and here presented were whether one who has been acquitted of a criminal charge could be subjected to a second charge by the grant of the State's motion for a new trial, there could of course be but one answer, and that in the negative. That the State could not review, upon writ of error, the refusal of the trial court to grant the State a new trial, or any ruling of law which might be alleged to be erroneous and which resulted in the discharge of the defendant, is true beyond contradiction. This matter has been repeatedly adjudicated by this court. However, it must be kept in mind that all of the rulings which have been made by this court from time to time were announced before the adoption of the amendment to the constitution of 1916, which conferred upon the Supreme Court the right to review by certiorari any and all judgments rendered by the Court of Appeals. And it can not escape our observation, that in supplying to the people, by amending the constitution of the State, an additional remedy, the ancient rule which projects the citizen against a second jeopardy was not overlooked.

If the motion of a defendant who has been convicted is overruled and he files a bill of exceptions, the rule laid down by this court in *Eaves* v. *State,* 113 *Ga.* 750 (supra), which denies the State the right accorded all other litigants of filing a cross-bill, is not interfered with. If one who has been convicted of a criminal offense is content to abide the judgment of the court, he can never

be tried again for the same criminal act, no matter how the denomination of the offense may be changed. But if one who has been convicted seeks a new trial on his own motion, the second trial, granted in answer to his prayer, is not a second jeopardy, even if he encounters dangers he did not anticipate, and meets a far heavier sentence as the result of the second investigation which he sought than he did in the first sentence imposed upon him. If a defendant convicted of crime is refused another trial, he is not compelled to file a bill of exceptions. But if he does file a bill of exceptions, he knowingly takes the risk of having the case decided upon certiorari by the Supreme Court; for it is a part of *the review* of the judgment overruling the motion for a new trial of which he complains. The constitution, as amended in 1916, provides that the Supreme Court can of its own motion direct the Court of Appeals to transmit to it, for its decision, the bill of exceptions and transcript of the record in any case pending on its docket. It also provides that the Court of Appeals may request the Supreme Court to give instructions on principles of law upon certified questions. One who files a writ of error, therefore, may have his writ of error to the Court of Appeals adjudicated by the Supreme Court in two ways, without any desire or movement upon his part. Thirdly, the Supreme Court had jurisdiction conferred upon it, by the amendment of 1916, to consider applications for the writ of certiorari, directing the Court of Appeals to send up the record for adjudication of any case where, in the opinion of the Supreme Court, the question involved is of such gravity and importance that it becomes the duty of the court to adjudicate and authoritatively decide such grave and important questions of law. The express language of the constitutional amendment does not restrict the application for review to defendants in criminal cases, nor does the language employed deny to the prosecuting officers charged with the duty of enforcing the laws of the land in the name of the State equal rights in the investigation of the question as to whether a new trial shall be granted on the motion of one who has been convicted of a criminal offense and who is asking for a new trial. The people may have been unwise in amending the constitution so as to grant the privilege of certiorari to review the judgment of the Court of Appeals upon the class of cases as to which jurisdiction had been conferred upon it by the constitution. But, in conferring jurisdiction

upon the Supreme Court to review by certiorari the judgment of the Court of Appeals, the constitutional amendment did not leave to conjecture or speculation the scope of the instrumentality by which the review should be effected, nor the method of its operation, nor distinguish by classes some who should be affected by the constitutional amendment and other classes of cases which should be excluded.

It is provided in art. 6, sec. 2, par. 5, of the constitution, as amended (Acts 1916, p. 19), defining the jurisdiction of the Supreme Court that "It shall also be competent for the Supreme Court to require, by certiorari or otherwise, any case to be certified to the Supreme Court from the Court of Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court." In accordance with this provision, this court passed the rules published in 146 *Ga.* 840 (Park's Code Supp. 1922, § 6259 (a) et seq., Michie's Code, § 6259 (1) et seq.), prescribing the nature of the procedure in case the writ of certiorari should be applied for to review a decision of the Court of Appeals. As we have said, the constitutional amendment provided for the writ of certiorari from the decisions of the Court of Appeals. It is an inseparable incident to any decision which may be rendered by the Court of Appeals which may affect the law of the State. It is perfectly plain that the constitutional amendment of 1916 is specially designed as the vehicle by which decisions of the Court of Appeals may be reviewed. Therefore one who brings a writ of error to the Court of Appeals to review his conviction for the purpose of obtaining a new trial in the inferior trial court, whether the same may be the superior court or a city court, himself assumes the risk of having the case reviewed either by the Supreme Court of itself requiring the Court of Appeals to certify the same to the Supreme Court for decision, or by the officers of the State applying for a writ of certiorari to have the law involved in the case authoritatively and finally determined by the court of last resort, to wit, the Supreme Court. Before the constitutional amendment of 1916, the judgment of the Court of Appeals was a finality. By the adoption of that amendment, the correctness of the decision of the trial judge was subjected to two tests—first, the decision of the Court of Appeals; and finally, a reference by certiorari to the Supreme Court, which would be a conclusion of the

whole matter. Decisions of this court rendered prior to the adoption of the amendments of 1916, are not in point on the question now before us. To place them in their strongest light, these holdings were simply to the effect that the State could not appeal, in the absence of express provision to that effect. At that time, attention was called to the fact that in several of the States the State had the right of appeal, by express statutory or constitutional provision. The specific terms employed in the constitutional amendment, which expressly give the right in *all* cases, without exception, must be construed as being an express provision for an unlimited constitutional right of review by certiorari, as one of the steps or stages of the review which the petitioner for a new trial himself invoked. For this reason I can not concur in the dismissal of the petition in this case upon the grounds stated therein. I am authorized to say that Mr. Justice Gilbert concurs in this dissent.