# HICKS *v.* LOUISVILLE & NASHVILLE RAILROAD CO.

No. 10573. APRIL 17, 1936. REHEARING DENIED JULY 3, 1936.

*Harwell, Fairman & Barrett* and *Mozley & Latimer,* for plaintiff.

*Tye, Thomson & Tye, Watkins Edwards,* and *Morris & Welsch,* for defendant.

BELL, Justice.   F. C. Hicks, a former employee of the Louisville & Nashville Railroad Company, recovered a verdict against the company for $9000.   The action was brought under the Federal employer's liability act.   Defendant pleaded the defense of assumed risk, and in its motion for new trial contended that the evidence established this defense as a matter of law.   The trial court refused to grant a new trial, and the defendant excepted. The Court of Appeals reversed the judgment solely upon the ground that the evidence failed to support the verdict.   The case is now before this court on the grant of a certiorari.

The defendant in certiorari insists that the case as presented to this court involves no question of gravity and importance, and should be dismissed upon the ground that the writ of certiorari was improvidently granted.   After a careful examination of the record, we agree with this contention.

The Court of Appeals summarized the case as follows:  "The evidence for the plaintiff showed that he had been in the employ of the defendant company for nearly twenty years, and that he, at the time he was injured, was employed as a fireman operating a train between Marietta, Georgia, and Ellijay; that while in the act of firing the engine on this particular trip, plaintiff observed that the coal feed stopped, and he took his coal-pick and dug into the coal and found a large lump.   He attempted to burst the lump by striking it with a coal-pick, and in striking it a small particle flaked from the same and struck him in the left eye and caused the loss of his eyesight.   It was pleaded and admitted that the following rule was in effect at the time:  'Coal will be broken to the proper size for firing and will be kept within reach of the

fireman, it being the intent that the coal be handled but once with the shovel.' The plaintiff testified that he was accustomed to the handling of coal and he knew the difference between striking coal and slate with a coal-pick, and that he had known for many years that slate would fly from slatey coal upon being struck; that particles would also fly from coal upon being struck; and that he knew these facts by observation and experience as a fireman for seventeen years. He saw the lump or substance before he struck it, but did not wear any goggles over his eyes to protect them; that he had never used any precaution to protect his eyes. He also knew that under the rule agreement he could not have been compelled to handle the lump which he attempted to break up. Evidence for the plaintiff also showed that the lump broken would show 'at a glance' that it contained more slate than coal. Upon conclusion of the plaintiff's testimony, the court refused to direct a verdict, and submitted the issues to a jury, which returned a verdict for the plaintiff." *Louisville & Nashville R. Co. v. Hicks, 49 Ga. App.* 846 (176 S. E. 698).

In its decision the Court of Appeals said: "It cannot be doubted, under the evidence in this case, that the plaintiff was fully aware of the fact that coal at times contains slate, and that lumps of coal or slate, when struck by a pick, would probably burst and cause particles or fragments thereof to scatter in all directions. It is also in evidence that he took no precaution to avoid injury because of such fragments, and that he did not wear any goggles at any time to protect his eyes. The evidence discloses that he fully knew and understood that such was and would be the natural and probable result of striking a lump of coal or slate with a pick. It is fairly inferable that such an occurrence was a frequent happening. Nevertheless this plaintiff in line of his duty, and even though the railroad company did not furnish to him coal that might be handled at all times with a shovel, acted in the face of an obvious danger with full knowledge of its consequences; and for this reason the evidence failed to support the verdict, and it was error for the court to overrule the motion for new trial." The petition alleged that this "ruling and decision" was erroneous, for the following reasons: "(a) That portion, to wit, 'It is fairly inferable that such an occurrence was a frequent happening' is erroneous and is assigned as error, for the reason

that it is not warranted by the evidence in the case. If such ruling has reference to the occurrence which happened in this case, that is, breaking with a pick a lump of slate on the engine, there is no evidence that any such occurrence had ever happened before. The court seems to have the misconceived idea that the evidence discloses that lumps of slate in the coal on the tender was a frequent happening, and that therefore this was an obvious danger or one which the fireman should have anticipated in the exercise of ordinary care. There is no evidence to warrant any such inference or conclusion; and petitioner says that the court erred in so ruling and holding, and petitioner assigns error thereon. (b) That portion, to wit, 'It cannot be doubted, under the evidence in this case, . . that coal at times contains slate,' is erroneous and is assigned as error, for the reason that it is not warranted by the evidence. If the court has reference to coal on the tender of the engine, there is no evidence to warrant any such conclusion. The coal used was fine coal. It is used by railroads and is what is called steam coal, and is used doubtless because it can be handled more easily, and also possibly because it is cheaper. The court, we take it, refers to lumps of slate being at times in the coal on the tender, because that would be the only thing which would be pertinent to this case. There is no evidence to justify any such statement or conclusion. This court may search the record and no such evidence will be found. Certainly there is no evidence that plaintiff was 'fully aware' of any such pre-existing condition; and petitioner says that the court erred in so ruling and holding, and assigns error thereon. (c) That portion, to wit, 'It cannot be doubted, under the evidence in this case, that plaintiff was fully aware of the fact . . that lumps of coal or slate, when struck by a pick, would probably burst and cause particles or fragments thereof to scatter in all directions,' is erroneous and is assigned as error, because it is not warranted by the evidence, and for the further reason that the court does not take into account the increased hazard from breaking a lump of slate over that of coal. The court apparently puts the hazard of breaking a lump of slate in the same category with breaking a lump of coal. The court fails to take into account the increased hazard from breaking a lump of slate. Assuming that some small particles of dust will fly when a lump of coal is broken, and that Hicks assumed that

small danger, whatever it was, when he broke what he thought was a lump of coal, it cannot be legally held that he also assumed the greater and increased hazard from breaking a lump of slate when such danger was not obvious to him. The said ruling is further erroneous in that the court assumes that particles or fragments fly equally in all directions from coal or slate, without any distinction between the two; the court by its ruling holds one as dangerous as the other. The evidence does not justify any such conclusion. The evidence is otherwise and shows that only dust or at times very small particles fly from coal, but that slate sends off sharp and cutting flakes, sharp enough to penetrate an eyeball like glass, and is more dangerous to break than coal; and petitioner says that the court erred in so ruling and holding. '(d) That portion, to wit, 'The evidence discloses that he fully knew and understood that such was and would be the natural and probable result of striking a lump of coal or slate with a pick,' is erroneous and is assigned as error, because not warranted by the evidence. This is a ruling that Hicks knew and understood that coal as well as slate would send off dangerous particles or fragments in all directions. There is no evidence to warrant the statement. Furthermore, assuming that slate will send off sharp flakes such as will penetrate an eyeball and make it more dangerous to strike it, there is no evidence to show that Hicks knew that this was slate, and there is no evidence that lumps of slate appeared on the tender *with such frequency* as to put him on notice that this was and probably might be a lump of slate, and therefore was an obvious danger which he assumed. Adams testified that it was an *unusual* lump in one of the tenders. And petitioner says that the court erred in so ruling and holding. (e) That portion, to wit, 'Nevertheless this plaintiff in line of his duty, and even though the railroad company did not furnish to him coal that might be handled at all times with a shovel, acted in the face of an obvious danger with full knowledge of its consequences,' is erroneous and is assigned as error, because it is not warranted by the evidence. There is no evidence that Hicks knew that it was a lump of slate or that he could have known in the exercise of ordinary care, or that he had reason to think so. And it would have to be shown that he knew it was slate, or that it was so obvious that an ordinarily prudent person would have observed and appreciated it.

And petitioner says that the court erred in so ruling and holding. (f) That portion, to wit, 'and for this reason the evidence failed to support the verdict, and it was error for the court to overrule the motion for new trial,' is erroneous and is assigned as error, because not warranted by the evidence, and because, petitioner alleges, that there was ample evidence to support the verdict. That the question of assumption of risk under the evidence was a question to be determined by the jury, and that there was ample evidence to authorize the jury to find that the plaintiff did not assume the risk, and the Court of Appeals erred in holding as a matter of law that the evidence failed to support a verdict in the case. The danger was not obvious to Hicks, and it was not a risk he assumed. It was negligence to leave a lump of slate in the tender, especially rolled down against the gate, the only place where he was to get the coal from, and to cover it up with the fine coal. An employee does not assume a risk due to negligence until he becomes aware of the danger or unless the risk is so obvious that an ordinarily prudent person would have observed and appreciated it. Petitioner alleges that the verdict was amply supported by the evidence, and the Court of Appeals erred in holding as a matter of law that the evidence failed to support the verdict, and erred in holding that it was error for the trial judge to overrule the motion for new trial; and the petitioner says that the court erred in so ruling and holding. (g) That part of the opinion, to wit: 'Evidence for the plaintiff also showed that the lump broken would show "at a glance" that it contained more slate than coal,' is erroneous and is assigned as error because it is not warranted by the evidence. The court evidently refers to that as proof that Hicks could have told 'at a glance' that the lump was slate and therefore was the obvious danger. The phrase 'at a glance' is taken from the testimony of Adams, the employee of defendant who handled the lump at Tate, Georgia, in the open, in the daytime, and rolled the lump back against the feed-gate. Adams testified: 'I can only say positively that I saw the outside, and the outside part of the coal appeared "from a glance" to be more slate than coal.' If the court means to infer that Hicks could have told 'at a glance' that the lump was slate, then it shows that the Court of Appeals never understood the case and had an erroneous conception of the evidence. The evidence is that it was

dark (Hicks says dusky dark) when the occurrence happened; that the lump was back behind the gate covered or partly covered with fine coal; that under these circumstances it was impossible for Hicks to know anything about its composition, except that it was a lump as he testified. He opened the firebox after his eye was hit, and with the bright light from the firebox streaming on it he could then tell it was slate; but this was after he had been hit and took the piece of slate from his eyeball. Petitioner alleges that the court had a misconception of the evidence in citing this testimony of Adams, who handled the lump in the daytime, as proof that Hicks could have told 'at a glance' that the lump was slate, for there could not be any other purpose in thus citing this testimony of Adams; and petitioner says that the court erred in so ruling and holding. (h) That portion, to wit, 'It is also in evidence that he took no precaution to avoid injury because of such fragments, and that he did not wear any goggles at any time to protect his eyes,' is erroneous and is assigned as error, because it was the duty of the master to furnish the servant Hicks a safe place to work and safe instrumentalities for the work, and the evidence is that the defendant company did not furnish him any goggles; and the court erred in holding in effect that he was negligent in not wearing goggles. The servant has a right to presume that the master has complied with its duty in furnishing him a safe place to work, and he may act upon this presumption until he discovers the negligent act of the master, to wit, in this instance the leaving in the coal bin a large lump of slate. It was not incumbent upon the servant to take precautions against a negligent act of the master of which he knew nothing and had no reason to anticipate in the exercise of due care. Adams testified it was an *unusual* lump in the tender, and yet it was rolled down where it blocked the gate and where he knew Hicks would have to break it in order to shovel out the coal. Hence the court erred in holding in effect it to be negligence on the part of Hicks in not taking precaution against injury by wearing goggles. (i) Petitioner alleges that the Court of Appeals erred in holding as a matter of law that the evidence failed to support the verdict, and assigns error upon said ruling for the reason that the evidence made a question for the jury; and the jury having found for the plaintiff, and the verdict being amply supported by the evidence, it was error for the

Court of Appeals to hold as a matter of law that the verdict was unsupported by the evidence in the case. Petitioner alleges that the Court of Appeals had a misconception of the law of this case as applied to the facts, and out of that grows the court's erroneous ruling that the verdict is not supported by the evidence, because the decision makes no distinction between the great and increased hazard or danger from breaking a lump of slate and the slight danger (if any) of breaking a lump of coal. The decision seems to put the hazard from breaking a lump of slate on the same plane as breaking a lump of coal. According to Hicks' testimony there is practically no danger in breaking a lump of coal, but there is great danger in breaking a lump of slate. Slate is hard, and sharp flakes fly from it like sharp pieces of glass such as will penetrate an eyeball, while small particles of dust might fly from coal but would not be such as would penetrate and destroy an eyeball. Hicks did not assume this increased hazard, not knowing that this was a lump of slate, and having no reason to think so in the exercise of ordinary care; and petitioner says that the court erred in so ruling and holding."

It is perfectly clear that these assignments of error do not involve any question of gravity and importance, so as to authorize a decision by this court on the merits. Under Rule 45 (formerly rule 2), the petition for certiorari "must specify the decision complained of and the alleged errors." ·Code, § 24-4549. So far as the petition complies with this rule, it alleges only that the decision and various parts of it were unwarranted by the evidence. No ruling or decision by the Court of Appeals on any proposition of law is complained of; but the only question presented to this court is whether the verdict in favor of the plaintiff was supported by the evidence as against the defense of assumed risk. On principle, this case is identical with *Louisville & Nashville Railroad Co.* v. *Tomlin,* 161 *Ga.* 749 (132 S. E. 90), where this court, after granting a certiorari and after argument, dismissed the writ as having been improvidently granted. That case was also brought under the Federal employer's liability act, and involved assumed risk as the principal defense. A comparison of the assignments of error there presented will show that they were not less important from the standpoint of public interest than the assignments in the case now before us. The opinion in that case quoted from a number of

decisions by this court, to the effect that a certiorari will not be entertained except in cases of public gravity and importance; and that the question merely whether a verdict is supported by the evidence, where only an issue of fact is involved, does not authorize a review by this court on certiorari. The following decisions by this court, together with several decisions by the United States Supreme Court, were cited: *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873); *King* v. *State,* 155 *Ga.* 707 (118 S. E. 368); *Parks* v. *Hardwick,* 158 *Ga.* 71 (2) (122 S. E. 553); *Jones* v. *Pacific Fire Insurance Co.,* 159 *Ga.* 248 (125 S. E. 470); *Clark* v. *Fire Association of Philadelphia,* 159 *Ga.* 567 (126 S. E. 387). More than one of such decisions by this court were concurred in by all of the Justices, and, unless and until reviewed and overruled in the manner provided by law, are binding as authority. To the same effect see *Briesenick* v. *Dimond,* 165 *Ga.* 780 (142 S. E. 118), where it was held: "The assignments of error in the petition for certiorari not being such as to justify a grant of that writ, it is dismissed as having been improvidently granted." That was also a decision in which all of the Justices concurred. A thorough discussion of the principles of law which should govern the action of the court in cases of this type will be found in the *Tomlin* decision, supra, and it is unnecessary to repeat in terms what was there said. Under the principles so enunciated, the present writ must be dismissed on the ground that it was improvidently granted.

*Writ of certiorari dismissed. All the Justices concur, except*

RUSSELL, Chief Justice, dissenting. I sincerely regret that I cannot concur in the opinion of my very learned associates. It is stated in the opinion of the majority that "On principle, this case is identical" with *Louisville & Nashville Railroad Co.* v. *Tomlin,* 161 *Ga.* 749 (supra). As I dissented in the *Tomlin* case, I am not bound by that decision, because it is only the decision of five Justices; and unless I have changed my views since that time, it would at least be consistent if I should dissent in the present case. The ruling of the majority in the present case is in effect (as will appear from reading the opinion) based upon the proposition that this court will not look into the evidence, or decide any question arising from the evidence, in a petition for certiorari; and it is to this proposition that I dissent

toties quoties. The records of the decisions of this court in numerous cases show, without question, that this has not been the uniform rule heretofore adopted by the Supreme Court. The history of the present case is somewhat peculiar. Upon the first application for the writ of certiorari the petition was denied, after lengthy consideration. Hicks, being dissatisfied, filed a motion for reconsideration; and after still further investigation and consideration the writ of certiorari in this case was granted. In these circumstances, even a layman, if he understood the meaning of the word "improvidently," would hardly say that this writ was "improvidently" granted. If this writ, as it now occurs to the majority of the court, was accidentally, or carelessly, or without due consideration granted upon the application of Hicks, surely a better word could be found than "improvidently." And the fact that this court has heretofore sometimes used the term, or even that it has been sanctioned by so great a tribunal as the Supreme Court of the United States, does not alter the case. Long before the existence of either of these storehouses of jurisprudence the Savior gave us the parable of the prodigal son, who insisted upon receiving his share of his father's estate, and wasted it in a far country. He acted "improvidently," as he found out when he fain would have eaten the husks that were thrown to the hogs he fed, and he decided to return to his father's house. Webster's New International Dictionary defines "improvident" as "Not provident; wanting foresight or forethought; not foreseeing or providing for the future; negligent; thoughtless; thriftless. . . Syn. Inconsiderate, negligent, careless, heedless, shiftless, prodigal, wasteful." An examination of the evidence in this case convinces me that my esteemed coworkers in the endeavor to discover justice have merely misapplied the law to the evidence, or the evidence to the law, as one may choose to state it. A reading of the opinion of the Court of Appeals will evince that that tribunal did not shirk or shun a thorough examination of the evidence. One reason why I can not concur in the judgment of my colleagues is that, so far as the subject of evidence is concerned, it is based upon the *Tomlin* decision, supra (from which I dissented), and presents strongly the proposition that the Supreme Court will not consider the evidence in the grant or refusal of the writ of certiorari. To this I can not assent. To say that when a verdict

has no evidence to support it it is contrary to law is but to repeat a homely maxim. Several generations of practitioners, with the approval, of the bench, have inserted in what are known as the general grounds of a motion for new trial an assignment of error that ".the verdict is contrary to evidence and without evidence to support it," and many rulings of this court have sustained that general ground and granted a retrial of the case.

There are several decisions of this court where a consideration of the evidence gave birth to a decision of the Supreme Court on petitions for the writ of certiorari. On certiorari to the Court of Appeals, in *Thompson-Starrett Co.* v. *Johnson,* 174 *Ga.* 656 (163 S. E. 745), Mr. Justice Hill, delivering the unanimous opinion of this court, said: "The findings of the industrial commission as to facts are conclusive where supported by evidence. The finding in this case was authorized." In that case, as in this, the superior court affirmed the finding of facts, except that in the *Thompson-Starrett* case the facts were found by the industrial commission (now the Department of Industrial Relations), and in the case now before us, by overruling a motion for a new trial, the judge affirmed the finding of facts by the jury. In the *Thompson-Starrett* case the judgment of the superior court was reversed, as in the case now before us, by the Court of Appeals, and the Supreme Court reversed the judgment of the Court of Appeals. However, as the question with which I am now dealing is as to a consideration of the evidence upon adjudicating the merits of a petition for certiorari, and as I assert that in many cases the evidence should .be considered, it is only necessary for me to quote what this court held in the *Thompson-Starrett* case: "We have examined carefully the evidence introduced before the industrial commission on the application of the defendant in error for compensation, and are of the opinion that the finding of the commission was authorized; and therefore the judgment of the Court of Appeals, reversing the judgment of the superior court which affirmed the finding of the industrial commission, must be reversed." An examination of the record in the *Thompson-Starrett* case shows that every assignment of error in the petition for certiorari was based wholly upon the evidence, and complained, as in the present case, in effect, that the Court of Appeals misconstrued the evidence. The case concerned only the running of a truck by Thompson-

Starrett Company, by the operation of which it was claimed Johnson was injured. It is true that in the petition for certiorari it was alleged that the matter was of "gravity and importance," and the judgment in favor of the widow of Johnson was set aside. Can it be said that a case in which the question of assumption of risk is involved, and in which the decision will affect several thousands of fellow servants, has less of "gravity and importance" than the *Thompson-Starrett* case, which involved only the alleged negligent operation of a truck belonging to a private corporation?

In *Independence Indemnity Co.* v. *Sprayberry*, 171 *Ga.* 565 (156 S. E. 230), Mr. Presiding Justice Beck, said: "Upon a careful review of *all the evidence* introduced before the industrial commission hearing the application of the plaintiff in error, upon which they based their opinion and finding and upon which they held that the employee, the applicant, failed to carry 'the burden in this case,' and that 'the accident did not arise out of and in the course of her employment,' this court is of the opinion that this finding was not without evidence to support it, and that the commission was authorized, in view of the law which makes their finding on the facts conclusive, to disallow the employee's claim for compensation; and the judgment of the Court of Appeals, reversing the judgment of the superior court affirming the findings of the industrial commission, must be reversed." In *DeKalb Supply Co.* v. *Moore*, 162 *Ga.* 758 (134 S. E. 620), five Justices reached their conclusions upon a consideration of the evidence. Mr. Justice Gilbert dissented for the same reasons for which he dissented in *Bryant* v. *Georgia Railway & Power Co.*, 162 *Ga.* 511 (134 S. E. 319), and was of the opinion that the writ of certiorari should be dismissed as improvidently granted. Four of the Justices held that "the trial court did not err in granting a nonsuit," and reversed the judgment of the Court of Appeals. Justice Beck dissented from the ruling made by the four Justices, "being of the opinion that the jury under the evidence was authorized to find that the case as made in the declaration had been proved." He also declined to decide whether a cause of action was stated, for the reason that there was no exception to the judgment overruling the demurrer. In *Bryant* v. *Georgia Railway & Power Co.*, supra, Mr. Justice Hill, delivering the opinion of the majority of the court, held that "Under the pleadings and the evi-

dence it was error for the Court of Appeals to affirm the judgment of the trial court in awarding a nonsuit." In the opinion he followed the ruling just quoted with the words, "and that the case should have been submitted to the jury, under proper instructions, to determine from the evidence whether the plaintiff's husband was guilty of such negligence under the circumstances as would debar his widow from recovering for his homicide." This was followed by a recital of several pages of evidence quoted from the testimony of witnesses in the case; and then the majority of the court held that "From the foregoing evidence we can not say as a matter of law that the plaintiff was guilty of such negligence as would bar a recovery," and then numerous authorities of this State and others were cited in support of the proposition that the question had been transmuted from one of fact into one of law. From a reading of the decision in *City of Brunswick* v. *Glogauer,* 158 *Ga.* 792 (124 S. E. 787), it is very plain that, despite the ruling that the sufficiency of the evidence was not determined, the evidence was examined before a conclusion in the case was reached. The case was remanded for another trial, and it is not usual in such cases to rule upon the sufficiency or weight of the evidence. In *Seaboard Air-Line Railway Co.* v. *Benton,* 175 *Ga.* 491, 495 (165 S. E. 593), the writer of the opinion said: "On the facts the case was an exceedingly close one. We do not overlook the fact that on two trials juries have returned verdicts in favor of the plaintiff." From this I think it must be inferred that the court could not have decided that the case was an exceedingly close one on the facts, without an examination of the facts as disclosed by the evidence. In the case of *Emory University* v. *Shadburn,* 180 *Ga.* 595 (180 S. E. 101), an examination of the record will disclose that the affirmance of the judgment of the Court of Appeals by this court must have been based upon the evidence in the case—the question whether under the facts of the case the hospital through its employees was liable for the injury to the plaintiff, or whether her injury was due to the neglect of a person who was not an employee of the hospital.

As appears from the opinion of the majority in the instant case, the applicant for certiorari assigned error on various excerpts from the opinion of the Court of Appeals. It therefore is unnecessary for me to reproduce them here. I think it will be obvious to

any one who reads them that a majority of the assignments of error are not lacking in that minuteness of specification required by the rule of this court. It is also to be remembered that though the decision in *Central of Georgia Railway Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873), was rendered in 1917, still this court has never expressly included in its rules that "gravity and importance" is the only test for the grant or refusal of a certiorari. The case of *King* v. *State,* 155 *Ga.* 707 (118 S. E. 368), was cited in the *Tomlin* case, supra, and perhaps in other decisions. I had the honor of delivering the unanimous opinion of the court in the *King* case. That decision involved only the question of confessions —how they should be admitted, and when they should not be admitted; and whatever was said in regard to the grant of a cer-. tiorari from the Court of Appeals was mere obiter, or at most merely illustrative in arguendo, and therefore, under well settled rules of construction, is not binding even upon the writer, and much less upon three of the Justices who concurred only in the headnote, viz.: "Incriminatory admissions and confessions are not admissible if there is evidence, arising from the testimony as to the circumstances under which the confession was made, that the making of the confession was induced by the slightest hope of benefit or the remotest fear of injury." Under the rule laid down in the *Yesbik* case, the first requirement is that the question must be one of "great public concern." To this I agree, bearing in mind that some of the greatest principles of law had their origin in the adjudication of cases of very trifling amounts, and it is with this qualification that I accept the first portion of Mr. Presiding Justice Evans' dictum. But the phrase "gravity and importance" is too vague, general, and indefinite to be comprehensible to me, and will be so until this court, with the same nicety and precision as are affixed to assignments of error in petitions for certiorari, has accurately defined the very general terms "gravity and importance." As I view this cause in its present condition, the Court of Appeals failed to fit the law to the facts as it had them before it, and· therefore erred in reversing the judgment of the trial court. And since this court has those facts before it in the assignments of error in the petition for certiorari, and nevertheless declines even to attempt to correctly remodel the garment made by the Court of Appeals, with all respect to my distinguished

colleagues I must say that in my humble opinion a great injustice is being worked, in which I decline to participate.