## 30351. ATLANTA COCA-COLA BOTTLING COMPANY v. JONES.

GUNTER, Justice.

We granted this application for a writ of certiorari to review the decision and judgment of the Court of Appeals in *Atlanta Coca-Cola Bottling Co. v. Jones,* 135 Ga. App. 362 (218 SE2d 36) (1975). We granted the writ for the purpose of determining whether the Court of Appeals committed error in affirming the grant by the trial court of a motion for directed verdict on the issue of liability in a rear-end vehicle collision case.

This court's concern emanates from the apparent trend in the trial courts and the Court of Appeals to remove from the jury, and to place in trial judges and appellate judges, the power to determine liability in rear-end collision cases.

In this case a jury was impaneled and heard evidence. At the close of the evidence, the trial judge directed a verdict in favor of the plaintiff on the issue of liability and submitted to the jury the issue of recoverable damages. The Court of Appeals affirmed the directed verdict as to liability and relied on a series of cases that apparently had their inception in the summary judgment area with the rendition of the decision in *Pike v. Stafford,* 111 Ga. App. 349 (141 SE2d 780) (1965). That case, citing *Powers v. Pate,* 107 Ga. App. 25, 27 (129 SE2d 193) (1962), stated the general rule: "Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." After stating this general rule the court then went on to say: "The evidence of the parties' actions in this case, however, shows negligence on the part of the defendant without contradiction and does not make a genuine issue *on the pleaded defense of negligence on the part of the plaintiff."* (Emphasis supplied.) P. 350.

In *Malcom v. Malcolm,* 112 Ga. App. 151 (144 SE2d 188) (1965), the Court of Appeals held that the trial court committed error in granting a summary judgment in favor of the plaintiff on the issue of the defendant's liability in a rear-end collision case. No reference was made in *Malcom* to the decision in *Pike.*

It appears from our research that the first case involving a rear-end collision in which a directed verdict of liability was rendered upon the trial of the case was *Sutherland's Eggs, Inc. v. Barber,* 116 Ga. App. 393, 394 (157 SE2d 491) (1967). *Sutherland's Eggs* followed *Pike* and distinguished *Malcom* by saying: "Nothing held herein is in conflict with *Malcom v. Malcolm,* 112 Ga. App. 151 (144 SE2d 188), where there was evidence that the plaintiff made a sudden stop."

In *Rosenfeld v. Young,* 117 Ga. App. 35 (159 SE2d 447) (1967), the Court of Appeals affirmed the direction of a verdict on the question of liability in a rear-end collision case and relied for that decision on *Pike v. Stafford,* supra, and *Sutherland's Eggs, Inc. v. Barber,* supra.

In *Malone v. Ottinger,* 118 Ga. App. 778 (165 SE2d 660) (1968), a summary judgment case, the Court of Appeals followed *Sutherland's Eggs* and *Pike,* and it distinguished *Malcom.*

In *Johnson v. Curenton,* 127 Ga. App. 687 (195 SE2d 279) (1972), the Court of Appeals affirmed a directed verdict on the question of liability in a rear-end collision case and relied on *Sutherland's Eggs* and *Rosenfeld.* The opinion also cited *Pike v. Stafford,* supra, and *Malone v. Ottinger,* supra, as being summary judgment cases affirmed on the same principle as the directed verdict cases. The *Johnson* opinion distinguished *Harper v. Plunkett,* 122 Ga. App. 63 (176 SE2d 187) and *Roesler v. Etheridge,* 125 Ga. App. 358 (187 SE2d 572) on factual differences, but then said: "We prefer however to differentiate these two cases because they involve summary judgment motions, whereas here we are passing upon a directed verdict." The opinion then said that the rule concerning construction of a party's testimony in a summary judgment decision is different from the rule in directed verdict cases. Pp. 689, 690.

In *Glaze v. Bailey,* 130 Ga. App. 189, 190 (202 SE2d

708) (1973), the Court of Appeals affirmed a directed verdict on the issue of liability in a rear-end collision case and relied on *Pike, Sutherland's Eggs, Rosenfeld,* and *Johnson* saying that they "more nearly fit the situation here than *O'Neil v. Moore,* 118 Ga. App. 424, 429 (164 SE2d 328), or *Thomason v. Willingham,* 118 Ga. App. 821, 822 (1) (165 SE2d 865)."

These cited cases, including the case at bar, indicate to us the decided trend in rear-end collision cases toward removing the power to determine liability from the jury and placing the power in a trial or appellate court.

In *Hay v. Carter,* 94 Ga. App. 382, 384 (94 SE2d 755), the Court of Appeals quoted from Judge Hutcheson's opinion in Cardell v. Tennessee Electric Power Co., 79 F2d 934, 936 (1935). We also quote from Judge Hutcheson's opinion here: "All drivers of vehicles using the highways are held to the exercise of due care. A leading vehicle has no absolute legal position superior to that of one following. Each driver must exercise ordinary care in the situation in which he finds himself. The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles of his intention so to do. The driver of the following vehicle, in his turn, must exercise ordinary care to avoid collision with vehicles, both those in front and those behind him. Just how close to a vehicle in the lead a following vehicle, ought, in the exercise of ordinary care, be driven, just what precautions a driver of such a vehicle must in the exercise of ordinary care take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him, just what signals or warnings the driver of a leading vehicle must, in the exercise of due care, give before stopping or slowing up of his intention to do so, may not be laid down in any hard and fast or general rule. In each case except when reasonable minds may not differ, what due care required, and whether it was exercised, is for the jury."

We conclude that "reasonable minds" rarely agree on the issue of liability in rear-end collision cases. Of course, where there is no dispute as to the facts, and they amount to a confession of liability as a matter of law, a directed verdict is warranted. But this is not such a case; such cases

are rare, and without an admission of liability or an indisputable fact situation that clearly establishes liability, it is error for the trial judge to direct a verdict on the issue of liability in favor of either party.

In rear-end collision cases the liability, degree of liability, or lack of liability on the part of any involved driver depends upon a factual resolution of the issues of diligence, negligence, and proximate cause. The history of the decisions of the Court of Appeals in this type of case since 1965 convinces us that these issues should be resolved, except in the very rare cases referred to above, by the jury and not by trial and appellate judges.

A reading of the transcript of the trial in the case at bar also convinces us that had the trial judge denied the motion for a directed verdict, submitted the issue of liability to the jury, and had the jury rendered a verdict in favor of the defendant, that verdict would have had to be sustained on the basis of the evidence adduced before the jury. The trial judge himself made the decision as to liability, the record showing that he made it somewhat reluctantly, and thereby prevented the jury from deciding this issue. We hold that he invaded the province of the jury, and this was error requiring a new trial.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Judgment reversed. All the Justices concur, except Hall, J., who dissents.*

ARGUED NOVEMBER 12, 1975 — DECIDED MARCH 11, 1976 — REHEARING DENIED MARCH 23, 1976.

*Hurt, Richardson, Garner & Todd, T. Cullen Gilliland, J. Robert Persons,* for appellant.

*Rich, Bass, Kidd & Witcher, Casper Rich,* for appellee.

HALL, Justice, dissenting.

I dissent to the grant of certiorari and the reversal of the judgments of the trial court and the Court of Appeals.

This is a routine "rear end" collision case in which there has never been any disagreement among the trial court, the Court of Appeals, the Supreme Court nor the parties in litigation over any principle of law. *Wynne v. Southern Bell Tel. & Tel. Co.,* 159 Ga. 623 (126 SE 388) (1925); *Powell v. Berry,* 145 Ga. 696 (89 SE 753) (1916); *Wakefield v. A. R. Winter Co.,* 121 Ga. App. 259 (174 SE2d 178) (1970); *Chotas v. J. P. Allen & Co.,* 113 Ga. App. 731 (149 SE2d 527) (1966). Therefore, there is absolutely no reason for certiorari to have been granted in this case. Furthermore, the principles of law discussed in the majority opinion are not limited to "rear end" collision cases. They apply as well to "front end" collision cases, "side" collision cases and to any other possible negligence issue in existence in the entire tort law area. Nothing new is said in that opinion.

This court granted certiorari by a vote of four to three. The only question which the four prevailing Justices wished to consider on certiorari was whether the Court of Appeals properly construed the facts. Counsel for both parties devoted their entire oral arguments to the facts. Neither of them cited a single decision in their arguments for the simple reason that the law was crystal clear.

Since 1916 when the Constitution was amended to allow the Supreme Court to exercise discretionary review of a decision of the Court of Appeals by writ of certiorari, this court has held that certiorari will not lie to review evidentiary matters, but only those of great public concern or gravity and importance. *Frazier v. Southern R. Co.,* 200 Ga. 590, 591 (37 SE2d 774) (1946); *Hicks v. Louisville & Nashville R. Co.,* 182 Ga. 595, 602 (186 SE 662) (1936); *Louisville & Nashville R. Co. v. Tomlin,* 161 Ga. 749, 761 (132 SE 90) (1926); *Central of Ga. R. Co. v. Yesbik,* 146 Ga. 620 (1) (91 SE 873) (1917). Even the Rules of this Court provide that "an application for the writ shall be granted only in cases involving gravity and importance." Rule 36 (j), Rules of the Supreme Court of the State of Georgia, effective December 1, 1975.

Let us look at the operation of the appellate process. Looking first at the appeal itself, the reason for having an appeal is not because the appellate judges necessarily

have more wisdom about the case than the trial judge (on the contrary they may have less); it is instead that a second look by someone else is always to the good. The Bible says, "in the multitude of counselors there is wisdom." So the idea is that it is good to have a panel of three judges examine what one judge has done. Should the process end there? An English judge thought that it should; he said "one appellate court is a reasonable precaution but two suggests panic." Nevertheless, in most states including Georgia there is another appellate court (usually seven justices) to exercise a discretionary review over the panel of three in what should be the very important cases. Again, the review is designed to allow seven to look at what three judges have done in matters of grave public concern. The review of right (three judges) is to determine whether the trial was conducted according to law and applicable procedure — to correct errors of the trial court. It is done primarily for the benefit of the parties to the appeal. Discretionary review in the highest court should be basically for the benefit of the public, to reconcile different holdings of the panel court and to declare the law on matters of gravity and public policy — this is called institutional review which is only incidentally for the benefit of the parties litigant. See II Study on Appellate Justice 171 (1975); ABA Standards Relating to Court Organization, 37 (1974); Meador, Appellate Courts, 2 (1974).

Unfortunately, under our archaic constitutional provision on the jurisdiction of our appellate courts, a losing litigant can obtain direct review as a matter of right before seven justices on such matters as divorce, alimony, child custody and disputes over land line cases. Code Ann. § 2-3704. In these matters our Supreme Court is serving the purpose of a traditional panel review for the benefit of the parties in litigation. Even with these and many other cases on our docket for direct review, we are constantly faced with hundreds of applications for certiorari in purely evidentiary matters. The current problem in the Supreme Court is our case load.[1] In my

---

[1]For the year 1975, 889 direct appeals were docketed

opinion we do not have enough time now to decide the important cases before us, and we exacerbate the problem by granting certiorari to review evidentiary matters already decided by the Court of Appeals. The applicants for certiorari cannot be blamed because it is never known whether we will or will not limit certiorari to matters of great public concern or gravity and importance. If we grant certiorari in any run of the mill case, the losing attorney in all other cases will be prompted to seek it.

The grant of certiorari in routine cases has been condemned by many experts in the appellate process field. One of the finest articles on this is by the late Professor Edson R. Sunderland entitled "The Problem of Double Appeals," reprinted in II Appellate Justice 186-187 (1975). He stated that "It is quite obvious that as a means of administering justice *double appeals are seriously objectionable.* In the first place they involve an economic waste of time, money and effort . . . Litigants *cannot afford* either the time or the expense of repeated appeals. The public cannot afford to maintain a judicial establishment for continually doing over again what ought to have been done well enough in the first place. In the second place double appeals discredit the judiciary. Public confidence in the courts is undermined by the spectacle of one appellate court reversing another, particularly when such reversals are by a divided court and the final decision may represent the opinion of the minority of the judges who passed upon the case. In the third place double appeals introduce a gambling element into litigation, which discourages resort to the courts and thereby impairs their usefulness as instruments of government . . . If the highest court exercises a general and undefined discretion, the latitude of the applicant in making this showing is almost without limits . . . The result is that no decision of the intermediate court is really final, and

---

by the Supreme Court and 288 applications for certiorari. This is two and one-half times the number of cases docketed ten years ago. In 1965, 364 direct appeals were docketed and 153 applications for certiorari.

every one carries within it the possible grounds for second appeal."

Another problem of double appeals is delay. For example, this accident occurred on January 15, 1971. The suit was filed on August 21, 1972. The judgment was entered on February 15, 1974; the trial court directed a verdict for the plaintiff on the issue of liability and the jury awarded a verdict of $35,000 in damages. A motion for new trial was overruled on September 17, 1974. The case was in the trial court for approximately two years, and the case proceeded to the Court of Appeals where the decision of the trial court was affirmed on June 18, 1975. The time from the appeal from the trial court to a decision by the Court of Appeals was approximately nine months. The case then proceeded to this Court for a second "appeal" and will be decided in March, 1976. The time for the judgment of the Court of Appeals to a decision by this Court has been approximately nine months. Since the case will now have to be tried again, perhaps this Court will be reviewing it again two or three years from now.

Professor Sunderland ends his article by urging all states to consolidate the two appellate courts into one united appellate court. If this court continues its present policy of unlimited grants of certiorari, I respectfully submit that the public would be best served by the consolidation of our two appellate courts into one. Many members of the profession might say that this would destroy our Supreme Court as a historic institution, which, of course, it would; but the mortal wound would have been self-inflicted. We simply cannot act out our proper role in a dual-appellate-court system if we refuse to let the Court of Appeals handle the Court of Appeals' cases that are of no particular gravity and therefore of no proper concern to us. The present case, a routine rear end automobile collision involving purely an evidentiary determination is a prime example of what we should not review.