## 62895. PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. et al. v. JOHNSON.

BIRDSONG, Judge.

This is a companion case to *Hensel Phelps Constr. Co. v. Johnson,* 161 Ga. App. 631 (288 SE2d 318). From the jury verdict and judgment against it in favor of the plaintiffs, Parsons, Brinckerhoff, Quade & Douglas, Inc.; Tudor Engineering Company; and Bechtel Inc. (collectively referred to as "Parsons, Brinckerhoff, Tudor, Bechtel" or "PBTB") appeal. *Held:*

1. PBTB contends the trial court erred in denying its motion to dismiss the suit because when this action was commenced against PBTB, there was a prior action already pending between the same parties based on the same cause of action. The parties' statements of facts and the record shows that when the appellees Johnson first brought suit in Fulton Superior Court in October 1976 for Mr. Johnson's injury on a MARTA rail construction site, PBTB, which was the construction manager of the project, was not made a defendant in the suit. A year later, on October 4, 1977, the plaintiffs filed a motion to add PBTB as a party defendant to the 1976 suit, but before this motion was granted and apparently to avoid the running of the statute of limitations, the plaintiffs on October 6 filed a new and separate suit against PBTB based on the same cause of action it sought to allege in the original case. This lawsuit was served upon PBTB on October 7, as was the plaintiff's motion to add PBTB as a defendant to the original case. In January 1978, the trial court ordered that PBTB be made a party to the original suit (hereinafter called the second suit). In March, PBTB answered the second suit, raising prior pending action as a defense.

In May 1978 PBTB filed a motion which "pursuant to Code Ann. § 3-601 ... move the court for an order compelling [plaintiffs]

to elect in which of two pending civil actions he intends to proceed against these defendants." In August, 1978 the plaintiffs did elect and did voluntarily dismiss the prior pending action. Six months after the plaintiffs dismissed that prior pending lawsuit, PBTB moved the trial court to dismiss the second suit (now on appeal) which the trial court refused to do.

On appeal, PBTB contends that the cases of *A. H. Robins Co. v. Sullivan,* 136 Ga. App. 533 (221 SE2d 697) and *Sparks v. Sparks,* 125 Ga. App. 198 (2) (186 SE2d 780) are controlling, in that under the clear holdings therein this second suit where it was made a defendant when there was a prior pending suit, was void ab initio, and the plaintiff's voluntary dismissal of the prior pending "suit does not preserve the second suit insofar as Code § 3-601 is concerned." *A. H. Robins,* supra, p. 536; see *Sparks,* supra, p. 200.

Appellant's argument is without merit. The *A. H. Robins* and *Sparks* decisions are misconceived insofar as they might imply that a second action is void ab initio where there is a prior pending action. This is not to be inferred from Code Ann. § 3-601 or § 3-607. To the contrary, Code Ann. § 3-601 merely provides that the pendency of a prior pending identical suit *"shall be a good cause of abatement"* to the latter identical suit. The analysis in *Sparks* is inappositely based on a Supreme Court case which dealt with a matter that involves only a penalty for procedural harassment of a different kind. See *Wright v. Jett,* 120 Ga. 995, 1001 (48 SE 345).

Where a prior pending suit is voluntarily dismissed *after* the defendant's plea in abatement for prior pending suit is filed, the dismissal of the first suit does not preserve the second suit. This was first held by the Supreme Court in 1872 in *Singer v. Scott,* 44 Ga. 659 (2), and confirmed in *Citizens & Contractors' Bank of Lithonia v. Johnson,* 175 Ga. 559 (165 SE 579); *Housing Authority v. Heart of Atlanta Motel,* 220 Ga. 192, 194 (137 SE2d 647). The reasoning here is that where a plaintiff persists in maintaining two suits on the same cause of action and does not choose or elect (see Code Ann. § 3-601) which one he will pursue, then it becomes the defendant's right to choose which suit he will defend and so he may file a plea in abatement under Code Ann. § 3-607; and when the defendant has done so it is too late for the plaintiff to make a choice and too late to dismiss the first suit, for the plaintiff, having compelled the defendant to choose as Code Ann. § 3-607 gives defendant the right to do, must content himself with the first suit alone. The *Sparks* case abstractly expressed the *Singer* rule without indicating whether the first case was dismissed before or after the plea in abatement was filed; in other cases the dismissal of the first suit was in fact made after the plea was filed (*A. H. Robins,* supra; *Steele v. Steele,* 243 Ga.

522, 523 (255 SE2d 43), or the prior suit was never dismissed at all. *McPeake v. Colley,* 116 Ga. App. 320 (157 SE2d 562); *Jones v. Rich's,* 81 Ga. App. 841 (60 SE2d 402); *Hood v. Cooledge,* 39 Ga. App. 476 (147 SE 426); *Stinson v. Weaver,* 22 Ga. App. 702 (97 SE 111). The appellees in this case having voluntarily dismissed their first suit before PBTB filed a plea in abatement under Code Ann. §§ 3-601 and 3-607, there is no good reason why the second suit should not have proceeded. When PBTB filed its plea in abatement for prior pending suit, there was no prior pending suit.

Moreover, PBTB is not entitled to dismissal of the second suit in any case. PBTB first treated the suits as being brought simultaneously and under Code Ann. § 3-601 moved to have the appellee elect which suit it would pursue. The appellees did so, dismissing their first suit. Only six months later did PBTB file its plea in abatement for prior pending suit, contending it was entitled to have the second suit dismissed as being void ab initio. Of course, in the meantime the statute of limitations had run on the appellees' cause of action. PBTB cannot in the face of these circumstances reasonably contend — even if the second suit should otherwise be void ab initio — that it is entitled to have the second suit dismissed for prior pending suit when the appellees at PBTB's request had already dismissed the prior pending suit.

2. We likewise find the second enumeration of PBTB to be without merit. PBTB contends the trial court erred in denying PBTB's motion for directed verdict at the close of the appellees' evidence in their case against defendants, and in denying the same motion at the close of the evidence, because "the evidence was insufficient to submit the case against PBTB to the jury" and because "the electrical lines presented an obvious hazard which plaintiff should have avoided and his failure to do so is not attributable to any negligence by PBTB."

A directed verdict is warranted only "if there is no conflict . . . as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall *demand* a particular verdict . . ." (Code Ann. § 81A-150 (a); emphasis supplied). Moreover, it is a cardinal rule that the appellate courts do not weigh the evidence and do not examine the sufficiency of evidence to support a verdict, but look only to see if there is "any evidence" to support it. *Lockwood v. Daniel,* 194 Ga. 544, 548 (22 SE2d 85); *Howard Sheppard, Inc. v. McGowan,* 137 Ga. App. 408, 410, 411 (224 SE2d 65); and see *Balkcom v. Vickers,* 220 Ga. 345, 347-348 (138 SE2d 868). The evidence in this case showed that Mr. Johnson suffered electrical shock while he and another construction worker were helping unload and stack steel beams which were being lifted and moved by use of a crane.

Apparently in some unknown manner, some part of the crane cable or crane, from which was suspended a steel beam being guided or steadied by Johnson, hit a nearby power line. Code Ann. § 34B-203 provides that the handling and storage of any equipment or materials under, over, by or near high-voltage lines is expressly prohibited, if at any time during such operation such equipment, supplies or materials will be brought within eight feet of any such high-voltage line, "except where such high-voltage lines have been effectively guarded against danger from accidental contact by . . . (4) de-energizing such high-voltage lines and grounding the same," and that "appropriate arrangements therefor shall be made with the owner or operator of such lines for such action." Code Ann. § 34B-205 provides: "When any such [activity] is to be performed within eight feet of any high-voltage line, the person or persons responsible for the work to be done shall promptly notify the owner or operator of the high-voltage lines of the work to be performed, and such person or persons shall be responsible for the completion of the safety measures . . . required by Code Ann. § 34B-203 before proceeding with any work which would impair the aforesaid clearance." Code Ann. § 34B-201 defines "person or persons responsible for the work to be done" as whoever "physically" performs the work.

Appellee Williams, the crane operator and the other construction worker, were employees of A. R. Winter Co., an independent subcontractor hired by MARTA's general contractor Hensel Phelps Construction Co. to unload and stack steel beams on a site for storage. An employee of Hensel Phelps was present in the back of the truck bed, measuring the steel beams and assisting the unloading of the beams from the truck. The consulting engineer for PBTB (which under its contract with MARTA, was MARTA's representative, management consultant and consultant engineer) located this site as one of three places he thought were proper for storage of the particular load of steel beams and Hensel Phelps chose this site of the three. The site was small and only big enough for the crane and the truck and the stacked beams. In fact, as more steel beams were stacked on the site the stacks of necessity got closer to the area of the power lines. There was evidence from which the jury could find that the PBTB resident engineer knew the site was small, that it contained power lines, and knew that the steel was being unloaded on that particular day. The appellee Williams saw the power lines and assumed they had been de-energized but nevertheless treated them as if they were "hot." Williams himself never got closer than eight or ten feet from the power lines. It is not clear what caused the cable or crane to come in contact with the wire. It is undisputed the power company would have de-energized the

wires if it had been notified by a phone call, but that no one from Hensel Phelps so notified the power company and no one from Hensel Phelps knew they were supposed to have the lines de-energized. The evidence is undisputed that PBTB never told Hensel Phelps the wires were supposed to be de-energized, notwithstanding the fact that PBTB conducted safety meetings with the contractor Hensel Phelps' employees, advised the contractor on safety matters and in fact PBTB had arranged a conference at which the contractor Hensel Phelps' employees met various utility personnel. At this conference, the Hensel Phelps' employee inferably responsible for arranging to de-energize these lines, met the utility employee actually responsible for de-energizing the lines upon notification, but this Hensel Phelps employee was not informed by PBTB of the requirement of or procedures for de-energization of power lines during construction. PBTB was hired by MARTA as construction manager of portions of the rapid transit system. The contract between PBTB provides that project management required of PBTB included "determination of the manner in which work will be accomplished"; that PBTB was to provide assembly or compilation of "pertinent statutes, laws, codes, regulations and procedures which may apply to the project or influence its . . . construction activity"; that PBTB was to provide "advice and assistance to the authority on . . . safety matters"; that PBTB was to perform a "library study," the "end product of this library research [to be] a matrix of identified statutory and advisory safety requirements possibly pertinent to the authorities long range program. . . ." The contract further provided for development of safety criteria: "The imposing of safety requirements on the long range program will be accomplished through many channels including the safety program operated as a part of the authorities construction specifications, the design criteria and standard and the operating and maintenance work rules. Working with the authority staff, and general counsel, the entire design, construction, operation and maintenance phases of the long range program will be analized [sic] to identify all areas where specific statutory and advisory requirements, is currently established, must be reflected and to inventory and codify all other subjects and areas where the degree of safety inherent in the system as it evolves is a variable to be consciously fixed. Assistance will be provided to the authority in its development of means by which authority will monitor the long range program to assure that the safety goals once set are achieved. Other outputs of this work item are definitions of specific safety requirements to be reflected in the authorities implementing documents."

This evidence authorizes a finding by the jury that PBTB was obligated to inform, advise and consult with Hensel Phelps with regard to the need to de-energize power lines as required by Code Ann. §§ 34B-201, 34B-203, and 34B-205; that these power lines should have been de-energized; and even that PBTB had notice or knowledge that those particular power lines should be de-energized and should have so informed the contractor; that PBTB failed in performance of this duty with the foreseeable result that Hensel Phelps failed to comply with Code Ann. §§ 34B-201, 34B-203 and 34B-205 and thereby caused injury to the appellee.

The jury was authorized to find that the appellee did not "deliberately choose an obviously perilous course of conduct" as there is no evidence that he was negligent and in fact he himself never came within eight feet of the wires. He did not, therefore, assume the risk of an obvious hazard (*Owens-Illinois v. Bryson,* 138 Ga. App. 78 (225 SE2d 475)), but rather the evidence shows that appellee appreciated the dangers involved and exercised due care, but nevertheless was injured through no fault of his own. See, as to cases where a plaintiff's own acts or lack of ordinary care for his safety amounted to assumption of risk of an obvious hazard: *Ga. Power Co. v. Purser,* 152 Ga. App. 181 (262 SE2d 473); *Douberly v. Okefenokee Rural Elec. Membership Corp.,* 146 Ga. App. 568 (246 SE2d 708); *Tect Const. Co. v. Frymyer,* 146 Ga. App. 300 (246 SE2d 334); *North DeKalb Little League v. Holland,* 119 Ga. App. 439 (168 SE2d 169); and see, where injury was caused by the intervening act of a third party and not by a foreseeably harmful act of the defendant, *Irwin v. Ga. Power &c. Co.,* 84 Ga. App. 665 (67 SE2d 151).

On appeal, we do not weigh the evidence but merely look to see if there is any evidence to support the verdict, *Howard Sheppard,* supra. The verdict in favor of the appellee is supported by the evidence; accordingly, the appellants were certainly not entitled to a directed verdict in the case.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 18, 1982 —
REHEARING DENIED MARCH 10, 1982.

*Judson Graves, Jack Spalding Schroder, Jr.,* for appellants.
*G. Michael Hartley, Paul A. Howell, Jr.,* for appellee.