## A99A0123. STOKES v. CANTRELL.
### (520 SE2d 248)

RUFFIN, Judge.

Margaret Stokes, as guardian of Martha Bearden, sued Edna Christine Montgomery and Matthew Clark Cantrell for injuries Bearden sustained in an automobile collision.[1] According to the complaint, Montgomery's automobile negligently collided with Cantrell's truck, causing Cantrell in turn to strike Bearden's automobile. The complaint alleges that Cantrell also was negligent and thereby caused or contributed to Bearden's injuries. The trial court granted Cantrell's motion for a directed verdict, and Stokes appeals. Because there is no evidence from which a jury could find that Cantrell was negligent, we affirm.

"[A] directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence, with all reasonable deductions and construed in favor of the non-moving party, demands a certain verdict. OCGA § 9-11-50 (a)." (Punctuation omitted.) *Cagle v. Ameagle Contractors*, 209 Ga. App. 712-713 (434 SE2d 546) (1993). So construed, the evidence shows that on April 13, 1993, around 5:30 p.m., Cantrell was traveling north on Georgia Highway 61, and Bearden was traveling south. Both drivers were approaching

---

[1] Stokes settled her case against Montgomery at trial.

the intersection of Highway 61 and Scoggin Road, and neither had a stop sign. As Cantrell neared the intersection, he saw Montgomery's car stopped at a stop sign on Scoggin Road, facing east, and he saw Montgomery look to her left. Cantrell testified that he did not see Montgomery look to her right, in the direction of his truck, but that he had no reason to believe that she either would not look right or had not already done so. As Cantrell drove through the intersection at or below the posted speed limit of 55 mph, Montgomery pulled into the intersection and struck the left rear of his truck. Cantrell testified that upon impact, his truck spun sideways out of control and hit another object — which turned out to be Bearden's vehicle — after which he lost consciousness. Cantrell testified that he never saw Bearden's vehicle, and Bearden has no memory of the collision.

Cantrell explained that he did not apply his brakes before Montgomery struck him because "by the time she pulled out she was right there at me." Cantrell further testified that he had no reason to brake or veer away from Montgomery because he was past her, and she struck the rear of his truck. Cantrell could not remember whether he applied his brakes after Montgomery hit him. Cantrell testified that he crosses this intersection daily and that he knew it was dangerous. Cantrell admitted that he was playing his radio loudly when Montgomery hit him, but there is no evidence that Cantrell failed to hear a horn or was otherwise distracted by the radio.

Trooper Chris Burger of the Georgia State Patrol was dispatched to the scene where he found Montgomery leaning against her vehicle, smelling strongly of alcohol. Burger administered a field sobriety test, which Montgomery failed. Burger testified that Montgomery said she did not see Cantrell's truck as she started across the highway. According to Burger, Montgomery "clipped" the left rear bumper of Cantrell's truck, causing it to spin 360 degrees, cross into the oncoming lane of traffic, and hit Bearden's car. Burger described the impact between Montgomery's and Cantrell's vehicles as a "glancing blow" and stated that the impact was consistent with Montgomery's having been stopped at the stop sign before entering the highway. Burger further stated that Cantrell's truck traveled approximately 94 feet before hitting Bearden's car and another 97 feet afterward, leaving tire marks on the highway. Burger estimated Cantrell's speed at the time of the collision as 50 mph.

Stokes argues that the trial court erred in directing a verdict in favor of Cantrell because the evidence permitted an inference that Cantrell was negligent in failing to avoid the collision with Montgomery.[2] First, Stokes contends that the jury could have found that Can-

---

[2] In pretrial briefing and during the trial, Stokes argued that Cantrell also was negli-

trell exceeded the posted speed limit of 55 mph and was therefore negligent per se, based on an interrogatory answer by Cantrell that he was driving "approximately" 55 mph and on the length of the tire marks left by Cantrell's truck. Stokes also argues that even if Cantrell was driving within the posted speed limit, he nevertheless violated OCGA § 40-6-180 by failing to slow down for the intersection because he knew the intersection was dangerous and he had not seen Montgomery look in his direction. Finally, Stokes argues that Cantrell was negligent in failing either to honk at Montgomery or to swerve or brake to avoid her. We reject each of these arguments.

First, there is no evidence that Cantrell exceeded the posted speed limit. Neither Cantrell's interrogatory answer, drafted by his lawyer, that he was driving "approximately" 55 mph nor the length of the tire marks left by Cantrell's truck permits an inference that Cantrell was speeding, in the absence of any positive evidence of speeding in the record. Cantrell testified at trial that he was traveling at the speed limit, while Trooper Burger estimated Cantrell's speed at 50 mph. Stokes presented no expert evidence at trial that the length of the tire marks indicated Cantrell was driving faster than 55 mph, and in the absence of such evidence, there was no basis for the jury to conclude that Cantrell was speeding. Moreover, Burger, who measured Cantrell's tire marks and who has investigated nearly 1,000 accidents during his career with the Georgia State Patrol, testified that he found no evidence that Cantrell had been speeding.

Second, there is no evidence that Cantrell drove "at a speed greater than [was] reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing." OCGA § 40-6-180. The record does not indicate the presence of precipitation, darkness, or any other environmental or highway hazard. Moreover, Cantrell's unrefuted testimony was that he saw Montgomery's vehicle stopped at the intersection, that he observed Montgomery look to her left, that he had no reason to believe that she had not or would not look to her right, and that she did not pull into the intersection until his truck was already there. A driver with the right of way at an intersection may assume that other drivers "will obey the rule of the road and will yield the right of way to him," and he may "proceed at a reasonable speed even though he sees another vehicle approaching." *Kicklighter v. Jones*, 202 Ga. App. 654 (415 SE2d 302) (1992); see also *Butler v. Huckabee*, 209 Ga. App. 761, 763 (3) (434 SE2d 576) (1993). Here,

---

gent in failing to brake after his collision with Montgomery, but Stokes has not raised this issue on appeal, and we therefore do not consider it. In any event, there is no evidence in the record that Cantrell could have avoided the collision with Bearden once Montgomery hit him.

[a]t the intersection, it was [Montgomery] who had a stop sign and [Cantrell] who had the right-of-way and there is no evidence that, as [Cantrell] approached the intersection, [he was] not proceeding at a reasonable speed. Accordingly, it is not material that, as [Cantrell] was approaching the intersection, [he] did not slow or stop after seeing that [Montgomery was stopped at] the intersection. . . . What would be material is whether [Cantrell] had an opportunity to avoid the collision *after* [he] saw or should have seen that [Montgomery] was entering *into* the intersection so as to cross [Cantrell's] lane of traffic.

*Kicklighter,* supra. The unrefuted evidence shows, however, that Montgomery did not start across the highway until it was too late for Cantrell to act and that Montgomery only "clipped" the rear of Cantrell's truck, nearly missing him. There is "*no* evidence to authorize a finding that, in the exercise of ordinary care, [Cantrell] could have avoided the collision after [he] saw or should have seen that [Montgomery] had entered into the intersection *and* was crossing [his] lane of traffic." *Leonard v. Miller,* 207 Ga. App. 602, 603 (2) (428 SE2d 646) (1993). See also *Morgan v. Braasch,* 214 Ga. App. 82, 84-85 (2) (446 SE2d 746) (1994).

*Franklin v. Hennrich,* 196 Ga. App. 372 (395 SE2d 859) (1990), cited by Stokes, is distinguishable. In *Franklin,* a driver who had just stopped at a stop sign inched out into an intersection where her view was obstructed and was then hit by another driver crossing the street who did not have a stop sign. Even though the second driver had the right of way, this Court held that the jury was entitled to find that she was negligently driving too fast under the circumstances because she had just crested a hill and was approaching an obviously obstructed intersection. Id. at 375 (2) (b). No such facts are present here which could permit an inference of negligence on the part of Cantrell.

*Lozynsky v. Hutchinson,* 159 Ga. App. 715 (285 SE2d 70) (1981), also cited by Stokes, is likewise inapposite. *Lozynsky* merely states that a driver has no "absolute right to assume that, in all cases, other drivers will obey the law and will drive in a reasonable manner." Id. at 716. *Lozynsky* does not disturb the general rule that, in the absence of special circumstances such as those present in *Franklin,* a driver who has the right of way and is observing applicable traffic laws may assume that other drivers, too, will obey the law.

Finally, there is no evidence that Cantrell was negligent in failing to honk, brake, or swerve around Montgomery's car. As discussed above, there is no evidence that Cantrell saw or should have seen Montgomery's car pulling out in time to take preventive or evasive

measures.

Negligence may not be presumed, but must be affirmatively proven, and in the absence of such proof, "we must presume performance of duty and freedom from negligence." *Kicklighter*, supra at 655. Because there is no evidence that would permit an inference of negligence on the part of Cantrell, the trial court properly granted Cantrell's motion for a directed verdict. Id.

*Judgment affirmed. Johnson, C. J., Pope, P. J., Andrews, Smith and Eldridge, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as I do not believe this case marks one of those extraordinary circumstances in which the jury's accountability as factfinder should be displaced by judicial findings and conclusions as to the disputed questions of diligence, negligence, contributory negligence and proximate cause. Georgia has long recognized that,

> " '[q]uestions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.' " *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). Added to that list are related issues of assumption of risk, lack of ordinary care for one's safety, lack of ordinary care in failing to foresee a condition which could cause injury (*Cowart v. Five Star Mobile Homes*, 161 Ga. App. 278, 279 (291 SE2d 13)), and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man. *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274). " 'Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication.' " *Epps Air Svc. v. DeKalb County*, 147 Ga. App. 195, 196 (248 SE2d 300).

*Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899). In the case sub judice, Cantrell admitted that he knew the collision site was a dangerous intersection; that his truck's velocity was approaching the maximum 55-mph speed limit just before the collision, and that he did not see Montgomery look out for vehicles approaching from his northerly direction before he drove through the intersection. I believe this evidence, proof that Cantrell did not reduce his truck's speed before traversing this hazardous area, and evidence that Cantrell's radio was blasting at the time of the colli-

sion, would authorize a jury's finding that Cantrell's negligence was a proximate cause of the collision. It is therefore my view that the trial court erred in granting Cantrell's motion for directed verdict.

> On a motion for directed verdict, the trial judge may not weigh the evidence or decide any issue of fact, but in order to direct a verdict must find that there is no evidence at all supporting the opposing party's position. *Parsons, Brinckerhoff &c. v. Johnson*, 161 Ga. App. 634 (288 SE2d 320) (1982); *Barber v. Atlas Concrete Pools*, 155 Ga. App. 118 (270 SE2d 471) (1980). Only where reasonable persons may not differ as to the inferences that are to be drawn from the evidence is it proper for the trial judge to withhold the case from the jury. *Brown v. Truluck*, 239 Ga. 105 (236 SE2d 60) (1977); *Plough Broadcasting Co. v. Dobbs*, 163 Ga. App. 264 (293 SE2d 526) (1982). This is truly *a fortiori* when there are present in the case questions of negligence, diligence, contributory negligence, and proximate cause, all of which are peculiarly matters for the jury. *Cowart v. Five Star Mobile Homes*, 161 Ga. App. 278[, supra]; *Eyster v. Borg-Warner Corp.*, 131 Ga. App. 702 (206 SE2d 668) (1974).

*Mansour v. McWilliams*, 172 Ga. App. 377, 378 (1) (323 SE2d 262).

DECIDED JUNE 29, 1999.

*Talley & Darden, Jeffrey B. Talley, George A. Pennebaker*, for appellant.

*Magruder & Sumner, J. Clinton Sumner, Jr., John A. Owens*, for appellee.